[L. A. No. 27360. In Bank. Nov. 6, 1964.]

HELEN NUNES, Plaintiff and Appellant, v. GORDON M.
NUNES, Defendant and Respondent.

Brock & Shapero, Brock & Fleishman, Edwin S. Saul and Robert L. Brock for Plaintiff and Appellant.

Snow & Snow and Hugh John Snow for Defendant and Respondent.

MOSK, J.—The trial court granted interlocutory decrees of divorce to both plaintiff Helen Nunes and defendant and cross-complainant Gordon Nunes, finding that each had wrongfully inflicted grievous mental suffering upon the other, and that defendant had inflicted grievous bodily injury upon the plaintiff. On this appeal, plaintiff claims that the evidence does not support the finding that she inflicted mental suffering upon defendant, that the court erred in denying her alimony and in making its award of the family home to her as her separate property "subject to the joint right" of the parties' minor child to the use and occupancy of the home.

Plaintiff and defendant were married in 1940, and their only child, Barbara, was born on March 31, 1943. At the time of the marriage, defendant worked as a cartoonist. During World War II he was employed at an aircraft factory, and after the war he returned to college. In 1948 defendant obtained a teaching position at the University of California at Los Angeles where in 1961 he was appointed to a full professorship in the art department at a salary of $1,033.33 per month.

Plaintiff returned to work after the war when her husband resumed his college education, and she continued to work full time until 1950, after which she has been employed, on various occasions, on a part-time basis. About seven months before the divorce trial, she was ill and quit her job as a supervisor in a nursery school, where she had received $210 per month for a "half time job."

Recitation of the melancholy events contributing to the ultimate disintegration of this marriage serves no salutary purpose. A synopsis becomes necessary, however, in view of plaintiff's challenge to the sufficiency of the evidence reflecting upon her conduct.

There was evidence of marital discord commencing as early as 1947. Defendant testified that plaintiff would become enraged and curse him, that on a number of occasions she would withdraw from family life by remaining silent for days at a time, that she would confine herself to her bedroom, become stuporous with sedatives for as long as an entire weekend, and that on other occasions she would absent herself from the family home overnight and fail to account for her whereabouts. According to defendant, plaintiff was rude to his friends and business associates.

Defendant also testified that the normal marital relationships and obligations were terminated in 1956, although the parties continued to reside in the family home until 1961, that no divorce was sought because it was believed that a divorce would be detrimental to the welfare of their daughter, that after their separation the parties would prepare and eat their breakfasts separately, that ordinarily the wife did not prepare dinner, that she avoided his company, that usually no conversation took place between them, and that they maintained separate bank accounts for their personal earnings. There is also evidence that a number of years ago each of the parties committed adultery.

The daughter of the parties testified that on a number of occasions plaintiff refused to speak to anyone for two or three days and that frequently plaintiff would scream and become hysterical. A relative also corroborated parts of defendant's testimony.

Plaintiff maintained that her emotional outbursts and curious behavior were a reaction dictated by her husband's constant criticism, including the charge that she was emotionally unstable. There is also substantial evidence of misconduct on the part of defendant, including testimony that on two occasions he resorted to violence.

At various times each of the parties underwent psychiatric treatment. Plaintiff was a patient at the Menninger Clinic in Kansas on three occasions, and both parties were undergoing psychiatric treatment at the time of this trial.

Determination of whether there has been an infliction of grievous mental suffering justifying the award of a divorce is ordinarily one of fact and is to be determined from the circumstances in light of the intelligence, refinement, and delicacy of sentiment of the complaining party. (*Lipka* v. *Lipka* (1963) 60 Cal.2d 472, 475 [35 Cal.Rptr. 71, 386 P.2d 671]; *Kirsch* v. *Kirsch* (1953) 119 Cal.App.2d 271, 275 [259

P.2d 444].) ▮ There is substantial evidence of conduct on the part of plaintiff likely to inflict grievous mental suffering, and much of the evidence is corroborated. ▮ The sufficiency of the corroborative testimony in a divorce action lies within the sound discretion of the trial court. (*Lipka* v. *Lipka, supra.*) ▮ Where the cruelty consists of successive acts of ill-treatment, it is not necessary that there be direct testimony of other witnesses to every objectionable act. (*Keener* v. *Keener* (1941) 18 Cal.2d 445, 449 [116 P.2d 1].) Although, as contended by plaintiff, defendant is an intelligent and educated man who, as a professor, has had experience in dealing with emotional and personality problems, he also had to undergo psychiatric care, and he contended that his wife's conduct interfered with the proper performance of his work.

▮ Plaintiff insists that her infliction upon defendant of grievous mental suffering was not ''wrongful'' within the meaning of section 94 of the Civil Code because assertedly the record establishes that the acts of which defendant complained were a product of her mental condition and not within her power to control. However, the record reveals no expert testimony to the effect that she was unable to contain her offensive conduct, and the court was not required to so find.

▮ If we assume *arguendo* that plaintiff's conduct was basically attributable to her emotional difficulties and that she was unable to discipline herself, it does not follow that defendant must be denied a divorce. *De Burgh* v. *De Burgh* (1952) 39 Cal.2d 858, 867-868 [250 P.2d 598], recognized marriage failure as a social problem and indicated correspondingly less preoccupation with establishing technical marital fault. This is suggested also by the designation in section 92 of the Civil Code of incurable insanity as a ground of divorce; when a union is affected by insanity of one spouse, fulfillment of the normal purposes of marriage is frustrated. Similarly, fulfillment of the normal purposes of marriage may be frustrated if conduct of one spouse, although the product of emotional problems not amounting to the malady defined in law as incurable insanity, inflicts grievous mental suffering upon the other. As long ago as 1909, this court determined that such uncontrollable personality traits as nervousness, excitability and mercurial temperament would not be considered in mitigation of cruel conduct. (*Grierson* v. *Grierson* (1909) 156 Cal. 434, 438 [105 P. 120, 134 Am.St.Rep.

137].) The words "wrongful infliction" in section 94 of the Civil Code do not prevent the granting of a divorce for conduct which is destructive of an harmonious marriage even if such conduct is the product of mental illness. (Cf. *Hayes* v. *Hayes* (1960) 181 Cal.App.2d 634, 640-641 [5 Cal.Rptr. 509].)

Where a divorce is granted to both parties, alimony may be granted to either, for the basis of liability for alimony is the granting of a divorce against the person required to pay it. (Civ. Code, § 139; *De Burgh* v. *De Burgh, supra,* 39 Cal.2d 858, 874.) In determining whether or not to grant alimony, the court should consider the comparative guilt of the parties, the needs of one spouse, and the ability of the other spouse to contribute support. (*Mueller* v. *Mueller* (1955) 44 Cal.2d 527, 530 et seq. [232 P.2d 869].)

The evidence as to the guilt of the parties is conflicting in some respects, and the undisputed evidence does not establish as a matter of law that defendant's culpability was greater than that of plaintiff.

The court found that plaintiff could be self-supporting. The record shows that she had emotional difficulties and suffered from diabetes and Bell's palsy but that she was capable of working during her emotional crises and had worked during most of the marriage despite her physical condition, that she had a bachelor's degree in business administration, that she indicated an intention to resume working, and that, though her earnings had not been substantial in the years prior to the divorce, she had worked only part time. It may be noted that the parties' home awarded to plaintiff was valued at approximately $22,500 with a mortgage of about $6,500, and that plaintiff was also awarded most of the household furnishings and more than $4,000 cash. With regard to defendant's ability to support plaintiff, it is clear that he earned a substantial salary and had a small income from painting.

Even where an innocent spouse is involved, the granting or refusing of alimony in an action for divorce lies largely in the discretion of the trial court. (*Baldwin* v. *Baldwin* (1946) 28 Cal.2d 406, 413 [170 P.2d 670]; see *Webber* v. *Webber* (1948) 33 Cal.2d 153, 161 [199 P.2d 934].) Although other triers of fact might have become more generously disposed toward plaintiff, under the circumstances of the present case we cannot find that there has been an abuse of discretion. This is not a case like *Webber* v. *Webber, supra,* where an

innocent spouse after a 36-year marriage is left with no property or source of income and without training or education which would equip her to earn a livelihood in the competitive world. Nor is it a case like *Brawman* v. *Brawman* (1962) 199 Cal.App.2d 876, 879 et seq. [19 Cal.Rptr. 106], where the dissolution of the 21-year marriage was due solely to the husband's fault, and the innocent wife, who had raised their children and had not worked for a period in excess of 20 years, was to be reduced to straitened circumstances.

 The language of the judgment awarding the family home to plaintiff as her separate property "subject to the joint right" of the parties' minor child to the use and occupancy of the home is ambiguous in that it might be construed as constituting a grant of an interest in the real property to the minor child. Where a judgment is ambiguous, reference may be made to the findings of fact and conclusions of law to clarify any uncertainty. (*Gelfand* v. *O'Haver* (1948) 33 Cal.2d 218, 222 [200 P.2d 790].) Here the court found that the child is gainfully employed and is capable of providing for her own support with the exception of proper living accommodations, and the court concluded that the child is not in need of support except for the use of the family home.

Under the circumstances, it appears that the court in providing that the home was "subject to the joint right" of the child to use the home was not seeking to grant an interest in the home to the daughter but was merely providing for her support during her minority. The trial court has the power to require either father or mother or both to assist in the support of minor children (Civ. Code, § 196), and the community property, quasi-community property, and the separate property may be subjected to the support of children (Civ. Code, § 143). So that plaintiff's title to the property is not clouded, however, the judgment should be clarified, and since the daughter has now reached majority, the ambiguity can best be eliminated by merely striking the condition.

The judgment is modified by striking from subparagraph A of paragraph 2 the words "subject to the joint right of the minor child to the use of [*sic*] occupancy of the said home." As so modified, the judgment is affirmed.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Peek, J., and Schauer, J.,* concurred.

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.