[Civ. No. 31564. Second Dist., Div. One. Mar. 29, 1968.]

IDA SIMON, Plaintiff and Appellant, v. JOSEPH SIMON, Defendant and Respondent.

628

Brock & Rykoff and Robert L. Brock for Plaintiff and Appellant.

David S. Smith for Defendant and Respondent.

FOURT, J.—Ida Simon appeals from an interlocutory judgment of the superior court in which she and her husband, Joseph Simon, each obtained a divorce from the other on grounds of extreme cruelty, which purported to divide the community property of the parties equally, and awarded appellant alimony of $250 per month for a period of four years.

Appellant contends that (1) the evidence was insufficient to support the decree of divorce awarded to her husband and that his testimony was not adequately corroborated; (2) the court abused its discretion in awarding appellant only one-half of the community property; (3) the community property was not in fact divided equally; and (4) the court abused its discretion in limiting the award of alimony to four years. These contentions are without merit.

Ida and Joseph Simon, who were married on July 31, 1937, and separated early in 1966, have two adult children residing away from the family home. Joseph is a partner in the publishing firm of Anderson, Ritchie and Simon; he also owns 50 percent interest in Silverlake Bindery and a 40 percent interest in Silverlake Lithographers. He receives a gross salary of $400 weekly and the company pays the full expense of one automobile for him to drive and a substantial insurance policy on his life. His wife, who was 55 years of age at the time of the divorce, worked as bookkeeper and general office manager for the firm of Anderson, Ritchie and Simon, either full or part time, for about eight years before their separation, and the evidence discloses that she was well qualified and competent in this occupation.

The depositions of both parties were taken before the trial and were, by stipulation, received by the court as evidence to be considered in the same manner as testimony given at the trial. Joseph testified that he had become morose and was forced to take sleeping pills regularly during the later years of his marriage because the continuing conduct of his wife became increasingly disturbing to him. He declared that Ida rarely, if ever, exhibited any sexual interest in him as her husband; that she manifested little affection of any kind for him; that she constantly and daily worried him, made incessant complaints, nagged him about trivial office problems on the way home from work and at home brought up imaginary problems concerning the home and children; that she

harangued him with these matters at meals and even awoke him from his sleep at night to discuss problems; that she was domineering; that for long periods she would devote her time almost exclusively to knitting, watching television and sleeping, which caused him increasing loneliness in his own home; that she was not sociable and forced her husband to bear the burden of all the family's social responsibilities; that she made little effort to please her husband and refused to comply with his reasonable requests that she take care of her personal appearance and attempt to control her excessive weight; that she refused to consult a marriage counsellor at his suggestion; and that ultimately he resorted to charitable and philanthropic activities as a remedy for his loneliness.

"With rhythmic regularity it is necessary for us to say that where the findings are attacked for insufficiency of the evidence, our power begins and ends with a determination as to whether there is *any* substantial evidence to support them; . . ." (*Overton* v. *Vita-Food Corp.*, 94 Cal.App.2d 367, 370 [210 P.2d 757]; *Ames* v. *Ames*, 168 Cal.App.2d 39, 40 [335 P.2d 135]; *Primm* v. *Primm*, 46 Cal.2d 690, 693 [299 P.2d 231].) Moreover, it is incumbent upon the appellant who contends that the evidence is insufficient to set forth the evidence in support of the judgment and indicate wherein it is insufficient. "It is well established that a reviewing court starts with the presumption that the record contains evidence to sustain every finding of fact. It is not the province of the reviewing court to search the record in order to ascertain whether it contains evidence that will sustain a contention made by either party to the appeal. Where an appellant claims that some particular issue of fact is not sustained by the evidence, he is required to set forth in his brief all of the material evidence on the point and not merely his own evidence. If this is not done the error assigned is deemed waived. [Citation.]" (*Cooper* v. *Cooper*, 168 Cal. App.2d 326, 331 [335 P.2d 983].) Although appellant's brief is deficient with reference to the matters just mentioned, we have reviewed the record and find therein substantial evidence to support the judgment in favor of the husband.

"In each case the infliction of 'grievous mental suffering' is a question of fact to be deduced from the circumstances of the case, in the light of the intelligence, refinement and delicacy of sentiment of the complaining party. [Citations.] A correct decision must depend upon the sound

sense and judgment of the trial court. [Citations.] Its conclusion will not be disturbed unless the evidence is so slight as to indicate an abuse of discretion." (*Keener* v. *Keener,* 18 Cal.2d 445, 447 [116 P.2d 1]; *Lipka* v. *Lipka,* 60 Cal.2d 472, 475 [35 Cal.Rptr. 71, 386 P.2d 671].)

■ Appellant further contends that the evidence lacked proper corroboration. Joseph's testimony was, however, substantially corroborated by his wife's admissions and the testimony of three witnesses who corroborated specific episodes. Appellant admitted that she made few, if any, sexual overtures to her husband during their marriage; she acknowledged that he frequently had to request her to cease her constant nagging about problems; and she stated that she customarily watched television until her husband fell asleep. The court could view her self-evident appearance and overweight which contributed to her husband's embarrassment and mental anguish. Lou Goodwin, one of Joseph's friends, declared that appellant was unsociable and related, as a typical incident, an occasion when appellant, at a social gathering at the Simon home, engaged a single guest in conversation to the exclusion of everyone else, forcing her husband to carry the host's burden alone. The same witness testified that he frequently had observed the Simons but had never seen appellant demonstrate outward signs of affection toward her husband. Another witness, Richard Lewis, testified that he had been forced to request that appellant refrain from discussing office operations with her husband away from the office. The testimony established a continuing and habitual course of conduct on appellant's part which aroused increasing anxiety and unhappiness in her husband. In fact, Joseph testified that only after separation from his wife was he once more able to sleep without medication, well and regularly. ■ "The principal purpose of the statutory requirement of corroboration is to prevent collusion, and where, as here, it is clear from the evidence that there is none, only slight additional proof is necessary." (*Ruggles* v. *Ruggles,* 43 Cal.2d 547, 548-549 [275 P.2d 42]; see also *LeVanseler* v. *LeVanseler,* 206 Cal.App.2d 611, 613 [24 Cal.Rptr. 206].) ■ The determination of the sufficiency of the corroborating evidence rests largely in the discretion of the trial court. (*Lipka* v. *Lipka, supra,* 60 Cal.2d 472, 475; *LeVanseler* v. *LeVanseler, supra,* 206 Cal.App.2d 611; *Spivak* v. *Spivak,* 191 Cal.App.2d 455, 457 [12 Cal.Rptr. 786].) ■ "Where the cruelty consists of successive acts of ill-treatment, it is not necessary that

there be direct testimony of other witnesses to every objectionable act." (*Nunes* v. *Nunes*, 62 Cal.2d 33, 37 [41 Cal. Rptr. 5, 396 P.2d 37].) The judgment of divorce granted to Joseph Simon by the trial court is amply supported by the evidence which is adequately corroborated.

 Appellant next contends that she was entitled to receive over one-half of the community property and that, in any event, the actual disposition of the community assets constituted an unequal division to her detriment. It is well established in this state that when the court awards a divorce to each of the parties, neither is an innocent party within the meaning of Civil Code, section 146, and the community property must be equally divided. (*De Burgh* v. *De Burgh*, 39 Cal.2d 858 [250 P.2d 598]; *Patterson* v. *Patterson*, 242 Cal. App.2d 333 [51 Cal.Rptr. 339].) The trial court correctly determined that each of the parties was entitled to one-half of the community property.

 The trial court then determined the value of the total assets of the community and divided them so that each of the parties participated equally. The husband was awarded his business interests; appellant received investment properties of equivalent value. Appellant's contention that the division was in fact unequal is based upon her own opinions of the value of specific items of property. Appellant contends, specifically, that her husband's business interests were undervalued because the goodwill of these going businesses was attributed no value. By contrast, she contends that the properties she received, including an Anderson, Ritchie and Simon debenture and equities in an office building and apartment house, were overvalued by the court.

 It was agreed, as appellant asserts, that the community property interest in Anderson, Ritchie and Simon, and the other two businesses, amounted to $50,000 "without any allowance for goodwill or going business value." Appellant introduced no evidence relating to the goodwill of these business ventures, or any of them, at the trial, and the court attributed no goodwill value to the enterprises. There was testimony by a partner, Mr. Ritchie, to support the trial court's determination that the goodwill value was negligible, since shortly before the Simons' separation the company had moved to a new location and the move resulted in a substantial, though perhaps temporary, decline in gross returns and an increase in expenses. No contrary evidence appearing in

the record, we must accept the trial court's finding of value.

Appellant received, among other things, a debenture and certain real property interests which she claims were overvalued. The due date of the debenture, which was originally issued by Anderson, Ritchie and Simon in 1953 payable in 1963, was extended by written agreement of the debenture holders. Although the debenture is part of an issue which is subordinated to two outstanding and open-ended superior obligations of the company, and due to the cash shortage which developed following the move the company does not anticipate that the issue will be redeemed before 1970, interest payments on the bonds were current through December 1966, and in the absence of evidence that the value may have deteriorated, the trial court properly attributed to the debenture its face value of $15,000.

Contrary to appellant's contentions, it appears that the court construed the evidence concerning the value of community equities in the two items of real property which it awarded to appellant liberally in her favor. (1) The parties owned an undivided one-half interest in an apartment building on Bedford Drive, which Joseph valued at approximately $50,000, basing this figure upon a loan appraisal of $300,000 against which a loan of $200,000 had been made a year and a half before the divorce. Appellant contends that the best recent offer on the building was $260,000 which would leave her a net equity of $20,000; that several leases will expire in the near future; that the property produces no current spendable income; and that it has been customary to give one month's free rental concession with a one-year lease. Her husband testified that there have been few vacancies in the building; that the property has increased in value since their purchase and that the scale of rentals is $225 to $300 per month. The court valued the community equity in the apartment at $30,000 in awarding it to appellant. (2) The couple also owned a partnership interest in an office building at Olympic and Bonnie Brae, the value of which Joseph estimated to be $12,000. Because of vacancies, the property had returned no spendable income to investors for two years prior to trial and, although appellant formerly received $150 per month as bookkeeper for the investment partnership, on July of 1966 her salary was withdrawn because the property failed to merit this expense. Appellant contends the partnership equity is worth only $7,500, based upon an alleged offer for purchase of the building. The court, in awarding this interest

to her, took the vacancy factor into account and valued it at $10,000. In both instances the court drew from the evidence reasonable inferences of value and reached a manifestly equitable resolution of the issue.

Finally, appellant contends that the trial court abused its discretion in limiting the award of alimony in her favor to a period of four years from the date of the divorce.

The trial court in making an award of alimony must have regard for the circumstances of the respective parties. (Civ. Code, § 139.) These circumstances include ''the needs of the parties and the abilities of the parties to meet such needs; and in measuring such circumstances, consideration should be given to property owned and obligations to be met as well as to ability to earn and actual earnings.'' (*Becker* v. *Becker,* 64 Cal.App.2d 239, 242 [148 P.2d 381].) While it is true that appellant is 55 years of age, she is an experienced and competent bookkeeper. She owns a substantial interest in the two items of income property hereinabove mentioned which might reasonably be expected to produce a respectable income for her in future years. She will receive $1,875 per year as rental of the premises occupied by Anderson, Ritchie and Simon also awarded to her; she will receive $250 per month for four years in order to assist her in establishing full or part time gainful employment and realizing upon the real properties to which she fell heir. In determining whether or not to grant alimony, the court should consider the comparative guilt of the parties, the needs of one spouse, and the ability of the other spouse to contribute support. (*Mueller* v. *Mueller,* 44 Cal.2d 527, 531 [282 P.2d 869].) ''Even where an innocent spouse is involved, the granting or refusing of alimony in an action for divorce lies largely in the discretion of the trial court.'' (*Nunes* v. *Nunes, supra,* 62 Cal.2d 33, 38.) No abuse of discretion is apparent in the instant case.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied April 24, 1968, and appellant's petition for a hearing by the Supreme Court was denied May 22, 1968.