[Civ. No. 50349. Second Dist., Div. Four. Feb. 17, 1978.]

CARL J. VERNER, Plaintiff and Appellant, v.
BIANCA M. VERNER, Defendant and Appellant.

**COUNSEL**

Elliott L. Aheroni for Plaintiff and Appellant.

Rhodes & Abramson, George H. Rhodes and Bruce D. Abramson for Defendant and Appellant.

**OPINION**

**JEFFERSON (Bernard), J.**—Carl J. Verner and Bianca M. Verner, parties to this appeal, were divorced in 1968 after a 35-year marriage. Eight years later, in 1976, Bianca initiated an order to show cause in re contempt, which cited Carl for his failure to carry out certain terms of the divorce judgment in not making available to her $8,906 from his retirement fund; she also requested an increase from $250 per month to $727 per month in spousal support. Carl resisted the contempt allegation, and requested termination of spousal support.

After a hearing, the trial court made an order dismissing the contempt charge, increasing the spousal support, and denying Carl's request for termination of spousal support. The trial court also made other orders concerning the retirement fund which we shall discuss herein.

Both parties have appealed.

At the time of the divorce in 1968, Carl had been an employee of the State of California during a substantial portion of the marriage, and contributions from his earnings had been made to the Public Employees' Retirement System.[1]

The interlocutory judgment of divorce, entered September 30, 1968, provided, in pertinent part, that "[i]t is further ordered that the [wife's]

---

[1] The system was not joined in the original litigation.

share of the $17,811.00 contribution to the [husband's] retirement fund is $8,906.00. This sum of $8,906.00 is to be paid by the [husband] to the [wife] upon the [wife's] election with the consent of the retirement fund to withdraw a portion or any sum thereof in cash; otherwise, upon the retirement of the [husband] in the ordinary course of events. This fund shall be used toward satisfaction of [husband's] obligation to support the [wife]." Elsewhere in the judgment there is provision for spousal support.

Carl retired in 1973, and elected to take his retirement income in monthly payments of $1,326.15; his named beneficiary (his present spouse) would receive, upon his death, benefits of $29,594.83, less $219.11 for each month the retirement income is paid. Carl has failed to pay Bianca any part of $8,906, the amount set forth as her share of the retirement contributions, although he has continued to pay spousal support of $250 per month.

At the hearing below, the contempt was dismissed on the grounds that contempt would not lie to enforce a division of community property and, further, that the order Bianca sought to enforce was "ambiguous and unintelligible."

In support of her request for modification of spousal support, Bianca testified that she is now in poor health (at 62 years of age), has a marked hearing loss, a problem with sight and needs extensive dental care. She stated she could not work, could not live on $250 per month; and had become dependent on her children and others for the basic necessities of life. Carl testified that his monthly income (retirement income and social security benefits) was $1,695. Carl has remarried; his new wife, aged 32 years, does not work, nor does Carl; the couple have adopted two young children whom they are obligated to support. Carl stated that his new family could barely manage on his monthly income. He offered no explanation for failing to pay Bianca her share of his retirement fund, but sought to persuade the court that Bianca was able-bodied and capable of supporting herself.

The trial court made the following order: "[Carl's] order to show cause re modification is denied. The only circumstances presented indicated that [Carl] has willfully and intentionally failed to comply with the Interlocutory Judgment; that [Carl] has done such things as to adopt two young children so as to defeat [Bianca's] rights which were awarded to her after 34 years of marriage, and [Carl] has named his present 32 year

old wife as his beneficiary under his retirement plan in the event of his death. [Bianca's] order to show cause re modification is granted.

"The Court finds that [Carl] in this matter in the Interlocutory Judgment of Divorce was ordered to pay to [Bianca] the sum of $8,906.00 which was her share of the contribution to [Carl's] retirement fund.

"[Carl] has done nothing to satisfy his obligation to [Bianca] in the amount of $8,906.00, representing her contributive share to his retirement fund.

"The Court finds that [Bianca] is unemployable. It is very obvious from her appearance in this court that she has a very serious hearing problem and is extremely nervous and emotionally upset. The Court further finds that she is in dire need of further funds.

"The Interlocutory Judgment . . . is modified in the following respects only: that [Carl] shall pay to [Bianca] as spousal support the sum of $600.00 per month . . . commencing on April 5, 1976, and to continue until such time as [Bianca] has received the total sum of $8,906.00 plus interest at the rate of 7% per annum, from September 27, 1968 plus $250.00 per month . . . .

"When the foregoing amount has been paid, then spousal support shall revert back to $250.00 per month, . . .

"[Carl] is ordered to forthwith provide the appropriate retirement system of the State of California which he receives his retirement [sic] with the necessary authorizations and payments so that the said sum of $600.00 per month shall be payable directly to [Bianca]. If [Carl] has not provided the necessary authorizations and papers to his retirement board so that the above payments shall be made directly to [Bianca] by the retirement board by April 1, 1976, a writ of execution shall forthwith issue, ordering [Carl's] retirement board to pay the said sums as aforesaid directly to [Bianca]. . . ."

Thus the trial court attempted to fashion an order that would force Carl to comply with the interlocutory judgment.

I

## The Interlocutory Judgment

Resolution of this dispute requires us to interpret those provisions of the interlocutory judgment which dealt with the retirement fund. We are guided by certain well established legal principles. ██ "Where a judgment is ambiguous, reference may be made to the findings of fact and conclusions of law to clarify any uncertainty." (*Nunes* v. *Nunes* (1964) 62 Cal.2d 33, 39 [41 Cal.Rptr. 5, 396 P.2d 37].) "[T]he 'same rules apply in ascertaining the meaning of a court order or judgment as in ascertaining the meaning of any other writing.' " (*Estate of Careaga* (1964) 61 Cal.2d 471, 475 [39 Cal.Rptr. 215, 393 P.2d 415].) " '[T]he entire record may be examined . . . .' " (*Id.*)[2]

We note that in 1968 the legal community generally understood that a vested retirement fund was a community asset. (*Smith* v. *Lewis* (1975) 13 Cal.3d 349, 355 [118 Cal.Rptr. 621, 530 P.2d 589, 78 A.L.R.3d 231].) In *Crossan* v. *Crossan* (1939) 35 Cal.App.2d 39, 40 [94 P.2d 609], the retirement fund of a California state employee had been so characterized; that principle was reaffirmed in 1970, in *Phillipson* v. *Board of Administration,* 3 Cal.3d 32, 40 [89 Cal.Rptr. 61, 473 P.2d 765].[3] It is apparent from the record before us that Carl and Bianca had been so advised in 1968. The parties had relatively little valuable community property to divide, and, given the respective ages of the parties at the time of the divorce, it seems reasonable to assume that both regarded disposition of the retirement fund as a major concern.

██ The totality of attendant circumstances persuades us that the judgment was drafted with the intention of awarding Bianca a present, equal ownership interest of $8,906 in the retirement accumulations as of 1968. We reject the notion that the judgment merely reflected Carl's personal obligation to pay that amount upon retirement.

The last sentence of the paragraph in the divorce judgment dealing with the retirement fund, which states that "[t]his fund shall be used towards satisfaction of [husband's] obligation to support the [wife]" does not preclude our determination that Bianca was awarded a property

---

[2] We have, therefore, sent for and examined the superior court file, as one avenue of assistance to us in our interpretation.

[3] Overruled on other grounds in *In re Marriage of Brown* (1976) 15 Cal.3d 838 [126 Cal.Rptr. 633, 544 P.2d 561].

interest. The sentence is ambiguous and subject to various interpretations; it is unclear whether "this fund" means the entire fund or Bianca's share; it is unclear what purpose was expected to be served by identifying the probable source of Carl's spousal support payments in the future, i.e., retirement income. We deem it unreasonable to construe this provision as Carl suggests, which is that his monthly payments of spousal support, to wit, $250, somehow constitute liquidation of the $8,906 sum, to totally discharge his obligation to Bianca. It is also unreasonable to assume that the parties contemplated a payment scheme wherein Bianca would receive her portion of the community in the taxable form of spousal support. We conclude, therefore, that this last sentence merely sought to identify the probable source of Carl's support payments at some future time, and nothing more.

## II

### The Issue of Joinder of the Public Employees' Retirement System

The record does not make clear why Bianca did not attempt, in 1973, to exercise the "election" referred to in the divorce judgment, or to directly pursue, by litigation, with the Public Employees' Retirement System, payment of her ownership interest, when payment was not forthcoming from Carl. Since 1972, the family law rules, particularly rule 1252, contained in the California Rules of Court, have provided for joinder of interested third parties in domestic relations litigation. (See *In re Marriage of Sommers* (1975) 53 Cal.App.3d 509 [126 Cal.Rptr. 220].) ■ As *Phillipson* made clear, the superior court clearly has the power to adjudicate Bianca's rights vis-à-vis the Public Employees' Retirement System, if that system is properly brought before the court.

■ Bianca's property right cannot be defeated by Government Code section 21201, which provides that "[t]he right of a person to any benefit or other right under this part and the money in the Retirement Fund is not subject to execution, garnishment, attachment, or any other process whatsoever, and are unassignable . . . ." *Phillipson* specifically held that section 21201 is inapplicable to division of retirement funds as community property, stating that "although we have interpreted section 21201 to bar creditors who seek to levy upon the pension funds, plaintiff here vindicates a different and distinguishable right: the right of ownership in the funds. Further, since the board in the present case cannot, and does

not, contend that an award of pension rights is a prohibited assignment under the code sections, it must inferentially recognize that, if such rights embrace community property, the court has both the power and obligation to divide such property equitably." (*Phillipson, supra,* 3 Cal.3d 32, 43.)

We note that chapter 860 of the Statutes of 1977 (Assem. Bill No. 1090), effective January 1, 1978, establishes a new procedure for joinder of an employee pension benefit plan as a party in an action for dissolution of a marriage. (See Civ. Code, §§ 4351, 4363, 4363.1, 4363.2, 4363.3.) Pursuant to the enactment of this legislation, specifically designed to deal with the problem of division of retirement benefits ordered in domestic relations litigation, the Judicial Council has revised its rules to provide for a separate joinder procedure only for such plans as the system. These rules, effective January 1, 1978, amend family law rules 1250 and 1253, revise an existing form, 1291.40, and adopt certain new forms (summons joinder), 1291.40; request for joinder of employee pension benefit plan and order, 1291.15, and notice of appearance, 1291.25) as mandatory for use in the domestic relations trial courts.

If she so desires, Bianca is entitled to make a motion, under the applicable joinder rules, to have the Public Employees' Retirement System included as an interested party in this litigation.

### III

*The Issue of Whether the Trial Court Committed an Abuse of Discretion in Ordering an Increase in Spousal Support Payments*

Carl claims that the modification of spousal support from $250 per month to $850 per month, constituted an abuse of discretion by the trial court, because Bianca failed to show at the hearing any "change of circumstances" that would support the increase. Carl argues that, in contrast, he presented evidence of such changed circumstances as to have entitled him to an order terminating spousal support.

■ It is axiomatic that the trial court has broad discretion with respect to modification of support orders, and that appellate review of such modifications is limited accordingly. (*In re Marriage of Judd* (1977)

68 Cal.App.3d 515, 524 [137 Cal.Rptr. 318].) We find no abuse of discretion based upon lack of changed circumstances; here we have an ex-wife whose health has clearly deteriorated—an adequate change of circumstances. The trial court was not required to show a preference for the new family Carl has acquired by viewing their needs as justification for terminating Carl's obligation to Bianca. Although Carl complains that the trial court made no express finding regarding changed circumstances, the record does not indicate that either party specifically requested such a finding. ·

The real problem with the modification order increasing Bianca's support is that it was obviously designed to enforce her community property rights and thus provide her with admittedly needed additional funds. The trial court's action was not an improper use of the modification power of the court; it represents simply a mislabelling of an appropriate order. The court's modification order did not increase spousal support from $250 to $850 per month. The initial support order of $250 per month was left intact. The added $600 per month constituted a valid method of requiring Carl to pay to Bianca her share of the community retirement benefits—the sum of $8,906.

We recognize that in *In re Marriage of Brown, supra,* 15 Cal.3d 838, 848, the principle was set forth that any inequity with respect to property rights cannot be "redressed by an award of alimony to the nonemployee spouse. Alimony, however, lies within the discretion of the trial court; the spouse 'should not be dependent on the discretion of the court . . . to provide her with the equivalent of what should be hers as a matter of absolute right.' "

But this is not the situation presented in the instant case. Community property division and spousal support are not unrelated. To the extent that Bianca can be supported out of her share of the community property, her need for help from Carl's resources is affected. Under the circumstances of the instant case, it was not unreasonable for the trial court to refuse to modify the original spousal support order of $250 per month provided in the interlocutory judgment, and require Carl to pay, in addition, $600 per month on his long-overdue obligation to share his retirement benefit.

## IV

### *The Validity of the Award of Interest*

■ The order under review gives Bianca interest at 7 percent per annum on $8,906 from September 27, 1968, the date of entry of the interlocutory judgment. Carl contends, and we agree, that the award of interest was improper. Bianca was not, by the terms of the judgment, entitled to receive any portion of her property interest until Carl's retirement; thus, the award may be distinguished from the usual award of a sum of money in a judgment which bears the legal rate of interest. The ambiguous and equivocal nature of the divorce judgment militates against any award of interest on Bianca's share of the retirement fund.

## V

### *Contempt as a Remedy for Enforcement of Orders Dividing Community Property in a Marital Dissolution Action*

Bianca claims that the trial court improperly dismissed the contempt proceeding, maintaining that it constituted her "sole remedy" for enforcing her rights to the $8,906 as one-half of the retirement contributions. The trial court acted—at least in part—on the ground that contempt does not lie to enforce a division of community property. We recognize that Code of Civil Procedure section 1222 provides that "[t]he judgment and orders of the court or judge, made in cases of contempt, are final and conclusive." ■ An order finding a party in contempt or exonerating a party from a contempt charge is not reviewable on appeal but by certiorari or, where appropriate, by habeas corpus. (*In re Buckley* (1973) 10 Cal.3d 237 [110 Cal.Rptr. 121, 514 P.2d 1201]; *In re Marriage of Milch* (1975) 47 Cal.App.3d 666 [120 Cal.Rptr. 901].) Nevertheless, we discuss this matter for the benefit of the trial court and counsel in the event of further proceedings that may develop.

At the time of the divorce judgment in this case there existed decisional law indicating that the trial courts were precluded from enforcing such a division, by contempt, because the result would be imprisonment for debt, prohibited by the California Constitution, article I, section 15.[4] (See *In re Hendricks* (1970) 5 Cal.App.3d 793 [85 Cal.Rptr. 220]; *In re Fontana* (1972) 24 Cal.App.3d 1008 [101 Cal.Rptr. 465].)

---

[4]Now section 10 of article I.

Even after the passage of the Family Law Act, including section 4380 of the Civil Code, which conferred wide powers on the trial courts to enforce its orders, the decisional law continued to distinguish between orders for support, which could be enforced by contempt, and orders for the division of property, which could not. Cases cited by Bianca approving the use of contempt as an enforcement procedure were careful to characterize the rights involved as support rather than property rights. (*Bushman* v. *Superior Court* (1973) 33 Cal.App.3d 177 [108 Cal.Rptr. 765]; *Tilghman* v. *Superior Court* (1974) 40 Cal.App.3d 599 [115 Cal.Rptr. 195].)

However, insofar as the enforcement of the division of retirement funds is concerned, it was held in *In re Marriage of Fithian* (1977) 74 Cal.App.3d 397 [141 Cal.Rptr. 506], that contempt could be invoked, if necessary. Reasoning that a spouse entitled to such division was not a creditor with a simple money judgment but a partial owner of the fund, the *Fithian* court rejected the argument that imprisonment for debt would occur if the recalcitrant spouse refused to obey the trial court's order. *Fithian* characterized the retirement fund as a special fund, and stated that "[t]o the extent that husband has wrongfully withheld the retirement pay funds belonging to wife, he is a trustee of those funds and subject to the remedies against unfaithful trustees . . . . husband's obligation [an order for deposit in court] . . . may properly be enforced by contempt." (*Fithian, supra,* 74 Cal.App.3d 397, 405-406.)

We agree with the reasoning of *Fithian.* It is in keeping with the public policy enunciated in *In re Marriage of Peterson* (1974) 41 Cal.App.3d 642, 651 [115 Cal.Rptr. 184], that "[t]he husband may not, by devices within his control, defeat the wife's right to what is community property," and approved by the California Supreme Court in *In re Marriage of Brown, supra,* 15 Cal.3d 838. In the case at bench, however, the divorce judgment did not spell out, with any degree of clarity, how Carl should proceed to pay Bianca the $8.906 in the event Carl elected to receive his retirement benefits in monthly installments upon his retirement. However, there is now an appropriate modification of the divorce judgment in this regard which may be enforced by the remedy of contempt.

Nor, as our discussion herein indicates, is contempt with respect to an appropriate order pertaining to the payment of the $8,906 the sole remedy that Bianca may ultimately pursue. The retirement fund, like Carl, cannot be permitted to defeat Bianca's right of ownership. While

we agree with Carl that the trial court invoked an inappropriate remedy by directing, on its own motion, the issuance of a writ of execution aimed at the retirement fund, which had never been made a party to this litigation, we do not mean to imply that ultimately it would be improper for the trial court to compel the retirement system to comply with its order.

In *Severdia* v. *Alaimo* (1974) 41 Cal.App.3d 881 [116 Cal.Rptr. 405], Alaimo, an attorney who had represented Mrs. Severdia in a domestic relations action, withheld funds derived from community property division belonging to his client. He was brought before the trial court by an order to show cause, and an order was made directing him to deliver to Mrs. Severdia the funds in question. On appeal, the order so made was upheld as an appropriate "writ of assistance," which was within the power of the trial court to make, pursuant to the broad enforcement powers outlined in Civil Code section 4380.

## VI

### *The Complaint That the Trial Court Evinced Hostility Toward the Ex-husband*

Carl complains that the record shows bias and hostility toward him by the trial court. The result, according to Carl, was less than a fair hearing. We agree that on occasion the record suggests that the trial court judge was experiencing irritation and impatience, but it does not appear that Carl was a target of such irritation any more than was Bianca. The record does not substantiate Carl's claim that he was denied a fair hearing.

The orders appealed from are modified in the following respect only: the three paragraphs of the orders beginning with the sentence "[t]he Interlocutory Judgment entered herein on September 30, 1968, is modified in the following respects only:" and ending with the sentence "[i]f the Petitioner has not provided the necessary authorizations and papers to his retirement board so that the above payments shall be made directly to Respondent by the retirement board by April 1, 1976, a writ of execution shall forthwith issue ordering the Petitioner's retirement board to pay the said sums as aforesaid directly to Respondent" are modified to read as follows:

"The Interlocutory Judgment entered herein on September 30, 1968, is modified in the following respects only: that the Petitioner shall pay to

the Respondent, representing her contributive share to Petitioner's retirement fund, the sum of $600.00 per month, payable on the 5th day of each month, commencing on April 5, 1976, and to continue until such time as Respondent has received the total sum of $8,906.00 from the Petitioner and/or his retirement fund. In addition, Petitioner shall pay to the Respondent as spousal support the sum of $250.00 per month, payable on the 5th day of each month, commencing on the 5th day of April 1976, and continuing on the 5th day of each month thereafter until further order of court.

"The Petitioner is ordered to forthwith provide the appropriate retirement system of the State of California, from which he receives his retirement, with the necessary authorizations so that the said sum of $600.00 per month shall be payable directly to the Respondent."

Except as so modified, the orders appealed from are affirmed.

Appellant and cross-respondent Carl J. Verner shall bear the costs of this appeal.

Files, P. J., and Kingsley, J., concurred.