[No. B156621. Second Dist., Div. Five. Oct. 8, 2002.]

In re the Marriage of TARA ROSE and SCOTT JAMES RICHARDSON.
TARA ROSE, Appellant, v.
SCOTT JAMES RICHARDSON, Appellant.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part III.C.

## COUNSEL

Barbakow & Ribet, Claudia Ribet and Wendy A. Herzog for Appellant Tara Rose.

Leslie Ellen Shear, Donald S. Eisenberg and Anne Haerhee Park for Appellant Scott James Richardson.

## OPINION

### TURNER, P. J.—

## I. INTRODUCTION

This is a family law "move away" case. Tara Rose (mother) and Scott James Richardson (father) cross-appeal from custody and visitation orders as to their minor son, Christopher Scott Richardson.[1] The trial court issued a move away order after refusing to conduct a de novo review of the relevant facts and circumstances. In the published portion of this opinion, we address the question of whether a custody stipulation entered into by the parties constituted a "final judicial custody determination" within the meaning of *Montenegro v. Diaz* (2001) 26 Cal.4th 249, 258 [109 Cal.Rptr.2d 575, 27 P.3d 289]. If the custody stipulation constituted a final judicial custody determination, then the trial court was not obligated to conduct a de novo review of the facts in devising a parenting plan that serves the best interests of Christopher. We conclude that the March 14, 2001, initial custody order pursuant to stipulation entered into by the parties did not constitute a final judicial custody determination within the meaning of *Montenegro*. Hence, the trial court was obligated to conduct a de novo review of the facts before devising a parenting plan that serves the child's best interest. We find the trial court acted beyond the scope of its allowable discretion in concluding no de novo review of the relevant facts and circumstances concerning the youngster's best interests was required. Accordingly, as discussed in the published portion of this opinion, we reverse the visitation and custody orders and remand for further consideration.

## II. BACKGROUND

The mother and father were married on September 18, 1993. The child was born on October 16, 1998. The parents separated in May 2000. A stipulated judgment dissolving the parents' marriage was entered on March 14, 2001. The March 14, 2001, judgment of dissolution set forth the purpose of the settlement as follows: "The purpose of this Judgment is to effect a complete, final and permanent settlement and adjustment of all of the parties' respective property rights, spousal support claims and any other financial rights and obligations, interests and claims of whatsoever nature arising out of their marriage which presently exist or which might hereafter

---

[1] The mother's appeal is from the December 14, 2001, custody and visitation order, and, purportedly, from the February 4, 2002, minute order denying her reconsideration motion. The purported appeal from the reconsideration denial order is discussed in the unpublished portion of this opinion. The father appeals from custody and visitation orders entered on December 14, 19, and 21, 2001.

arise or exist in any jurisdiction worldwide but for the provisions contained in this Judgment. *In addition, it is the intent of the parties to effect a reasonable and fair settlement of the issues of child support and child custody based on the best interests of their child.*" (Italics added.) The judgment contained comprehensive provisions irrevocably resolving property and other financial issues. Other language was consistent with an intention to resolve all issues between the parties. At one point, the agreement stated: "By this Agreement, Petitioner and Respondent intend to settle all rights and obligations between them, including all aspects of their marital rights and obligations. Except as otherwise expressly provided for in this Judgment, each of them releases the other from all liabilities, debts and obligations of every kind, whether previously or hereafter incurred, including both personal obligations and encumbrances on the other's property, and including all obligations of mutual support. [¶] . . . Except for the claims and demands and rights in this Judgment created against either of the parties hereto, which claims, demands and rights are expressly reserved from the operation of this paragraph, each of the parties hereto, for himself or herself and his or her respective heirs, executors, administrators and assigns, hereby releases, relinquishes, quitclaims and surrenders to the other party, and to his or her respective heirs, executors, administrators and assigns, all and every right as the spouse of the other and any and all claims and demands of every kind, nature and description, whether past, present or future, on or against the other or on or against the property of the other, including any claims for support that either of said parties might otherwise have or claim to have against the other party, or his or her said estate, for or by reason of any matter whatsoever."

But the March 14, 2001, judgment also included child custody and visitation orders which were *solely consistent with an intent to resolve those matters in the future.* The court awarded joint legal custody of the child to the parents; primary physical custody[2] of the child to the mother; and "reasonable visitation, pursuant to the agreement of the parties" to the father. The judgment resulting from the stipulation further stated: "In the event the parties are unable to resolve their custody and visitation issues, they shall agree upon a therapist or counselor who has a background and/or specialty in child development and child custody issues to assist them in resolving their issues. . . . If after meeting with a therapist or counselor, the parties remain unable to resolve their differences, they shall make an appointment with the

---

[2]Though frequently employed, the term "primary physical custody" has no legal meaning. (*In re Marriage of Biallas* (1998) 65 Cal.App.4th 755, 759-760 [76 Cal.Rptr.2d 717].) It is not found in the Family Code. (*Brody v. Kroll* (1996) 45 Cal.App.4th 1732, 1736-1737 [53 Cal.Rptr.2d 280].) Under the Family Code, a parent may be awarded joint physical custody (Fam. Code, § 3004) or sole physical custody. (Fam. Code, § 3007; see Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2002) ¶ 7:361, pp. 7-129 to 7-130.)

Conciliation Court at the Los Angeles County Superior Court prior to either party filing a request with the Court for a hearing on the issue."

After entry of the dissolution of marriage judgment, an arrangement developed whereby the father had physical custody of the child about 15 percent of the time—two evenings a week and alternate weekend overnights. As discussed below, the father contends he should have had more time with his son. But, the father argues, the mother restricted his contact and denied him reasonable visitation.

In October 2001, the father sought modification of the child custody and visitation orders. He presented evidence as to the following: he had a very close relationship with his son and they were bonded to each other; he spent two evenings a week with his son in addition to alternate weekend overnight visits; the mother had frustrated his contact with their son and had denied him reasonable visitation; the mother had recently announced her intention to move with the child to Seattle, Washington; and efforts to mediate the situation had failed given the mother's "inflexible and uncompromising" attitude and position. The father sought, among other things, joint legal and physical custody of the child. In the "other relief" portion of the Judicial Council Application for Order and Supporting Declaration form, the father sought the following order: "For a focused child custody evaluation addressed to the developmental needs of three year old Christopher including an assessment of his temper[a]ment, attachment to [the father] and ability to spend periods up to fifteen days each month [away] from one parent or the other."

The mother opposed the father's requests, including the request for an evaluation, and sought to maintain primary physical custody of their son, then three years old. She presented evidence she had been the child's primary caretaker since his birth. In addition, the father's visitations with their son had been marked by poor transitions and lack of appropriate care in terms of naps and meals. The mother requested that she be allowed to move with the child to Seattle. The mother further requested ". . . that the physical custody arrangement that this Court orders will take into account the need for a gradual increase of [the father's] overnights with Christopher, taking into account Christopher's age."

In his reply, the father denied the mother's claims; maintained he had consistently sought more time with Christopher; and asserted he had always taken proper care of the youngster. The father made the following request: "I request that the Court give me a 50/50 timeshare until Christopher is school age and a considerable timeshare after he enters school . . . ."

The father's order to show cause re modification of custody and visitation was first heard on October 22, 2001. The court ordered the mother could move to Washington; *there would be no de novo review of the custody and visitation order*; there was no reason to order an evaluation; visitation between father and son would not exceed a three-day stretch; but the parties were to return to conciliation to "hammer it out." The parties were ordered to return to court on October 30, 2001. At the October 30, 2001, hearing, the trial court denied the father's request to present further evidence, including expert evidence. The court stated it would consider the parties' separate visitation proposals and rule on the matter on December 3, 2001. On December 3, 2001, the court ordered the parties to present a joint statement of their positions on visitation by December 11, 2001.

The trial court issued orders on December 14, 19, and 21, 2001, resolving custody and visitation issues. Pursuant to the December 14, 2001, order, the parents were awarded joint legal custody of the child; the parents were also awarded joint physical custody; but primary custody was awarded to the mother. The December 14, 2001, order also set forth the following general visitation schedule: "[The mother] is ordered to bring Christopher to Los Angeles on the first weekend of each month [or an agreed-upon alternative weekend] for visitation with his father so that Christopher spends up to 72 consecutive hours in his father's care. . . . In no event is Christopher to miss his monthly weekend visit in Los Angeles with [the father]. [¶] [The father] is awarded additional visitation in Washington for two visits per month, of up to 72 hours consecutive duration. [The father] may combine two 72-hour visits into one trip, provided that Christopher spends 24 hours in his mother's care at the midpoint of the extended visit and that he miss no more than one day of preschool during the extended visit . . . ."

The December 19, 2001, order provided: "1. The court finds that the facts of this case do not distinguish it from *In re Marriage of Burgess* (1996) 13 Cal.4th 25 [51 Cal.Rptr.2d 444, 913 P.2d 473] for the purpose of determining whether or not [the mother] can move to Washington State *without the need for a de novo hearing.* The Court orders that pursuant to *In re Marriage of Burgess* [the mother] may move to Washington forthwith with the minor child . . . and the Court orders that *there shall be no de novo review of the custody and visitation order* set forth in the parties' Judgment of Dissolution. [¶] 2. The Court denies [the father's] request to modify the current custody orders so as to give [the father] approximately fifty percent (50%) physical custody. [¶] 3. The Court denies [the father's] request for a custody evaluation pursuant to Family Code section 3111. The Court finds that none of the facts generated by any of the declarations suggests that there is a need for one. *The Court further finds no change in circumstances that is required to*

*generate a de novo review, and therefore the Court will not order a custody evaluation.* [¶] 4. The Court denies [the father's] request for a 10-day period each month in Los Angeles with the minor child. The Court finds that ten days is too much time for a three-year-old, especially a three-year-old in preschool. The Court further finds that preschool is important. The Court further finds that [the father's] proposal to simply take the minor child out of preschool for what would clearly be a full week at times during this proposed ten-day period is not very considerate of [the father]. [¶] 5. The Court finds that three overnights in a row with [the father] is appropriate for the present time. [¶] . . . [¶] 7. The Court orders the parties to attend Conciliation Court based on the parameters ordered by the Court in this Order, and they are ordered back to this department on October 30, 2001 . . . ." (Italics added.)

The court's December 21, 2001, order stated: "1. The Court denies [the father's] request to reopen the issue of . . . a custody evaluation. [¶] 2. In light of the fact that the parties did not reach a settlement in Conciliation Court of the issue of the visitation and holiday schedule, the Court orders each party to submit to the court his or her proposed schedule, and the Court will make its determination based thereon. [¶] 3. The Court orders the parties and counsel to return on December 3, 2001, for its ruling on the remaining outstanding issues. [¶] 4. The Court denies [the father's] request to submit evidence or bring in expert testimony on December 3rd as to why the visitation plan proposed by [the father] is appropriate. The Court finds that [the father's] request to set the matter for a review date in the future is inappropriate and therefore denies this request."

## III. DISCUSSION

### A. *Standards of Review*

Custody and visitation orders are reviewed for an abuse of discretion. (*Montenegro v. Diaz, supra,* 26 Cal.4th at p. 255; *In re Marriage of Burgess, supra,* 13 Cal.4th at p. 32.) The Supreme Court has explained: "The precise measure is whether the trial court could have reasonably concluded that the order in question advanced the 'best interest' of the child. We are required to uphold the ruling if it is correct on any basis, regardless of whether such basis was actually invoked. (*Davey* v. *Southern Pacific Co.* (1897) 116 Cal. 325, 329 [48 P. 117].)" (*In re Marriage of Burgess, supra,* 13 Cal.4th at p. 32.)

We examine a dispute concerning the legal effect of the March 14, 2001, judgment utilizing the following standards of review: "The meaning

and effect of a judgment is determined according to the rules governing the interpretation of writings generally. (*Verner* v. *Verner* (1978) 77 Cal.App.3d 718, 724 [143 Cal.Rptr. 826]; *Estate of Careaga* [(1964)] 61 Cal.2d [471,] 475 [39 Cal.Rptr.2d 215, 393 P.2d 415].) ' "[T]he entire document is to be taken by its four corners and construed as a whole to effectuate the obvious intention." ' (*In re Gideon* (1958) 157 Cal.App.2d 133, 136 [320 P.2d 599], quoting *Lazar* v. *Superior Court* (1940) 16 Cal.2d 617, 622 [107 P.2d 249].) ' "No particular part or clause in the judgment is to be seized upon and given the power to destroy the remainder if such effect can be avoided." ' (*In re Gideon, supra,* at p. 136, quoting *Larrison* v. *Walker* (Tex.Civ.App. 1941) 149 S.W.2d 172, 178.) [¶] Where an ambiguity exists, the court may examine the entire record to determine the judgment's scope and effect. (*Estate of Careaga, supra,* 61 Cal.2d at p. 475; *Verner* v. *Verner, supra,* 77 Cal.App.3d at p. 724.) The court may also ' "refer to the circumstances surrounding the making of the order or judgment, [and] to the condition of the cause in which it was entered." ' (*In re Gideon, supra,* 157 Cal.App.2d at p. 137, quoting *Ex Parte Ambrose* (1887) 72 Cal. 398, 401 [14 P. 33]; see *Yarrow* v. *State of California* (1960) 53 Cal.2d 427, 436 [2 Cal.Rptr. 137, 348 P.2d 687]; *Estate of Callnon* (1969) 70 Cal.2d 150, 157 [74 Cal.Rptr. 250, 449 P.2d 186].) Subsequent actions by the re[n]dering judge may be considered as bearing upon the judgment's intended meaning and effect. (See *Verdier* v. *Verdier* (1953) 121 Cal.App.2d 190, 192-193 [263 P.2d 57].)" (*People v. Landon White Bail Bonds* (1991) 234 Cal.App.3d 66, 76 [285 Cal.Rptr. 575].) In the absence of ambiguity in the March 14, 2001, judgment, we conduct de novo review of the custody provisions. (*Fox v. Fox* (1954) 42 Cal.2d 49, 52-53 [265 P.2d 881]; *Roberts v. Roberts* (1964) 226 Cal.App.2d 507, 519 [38 Cal.Rptr. 176].)

## B. *De Novo Review of Custody and Visitation Was Required*

 The father contends the trial court erroneously concluded the March 14, 2001 stipulated judgment was a final judicial determination of custody and therefore did not consider, de novo, the best interest of the child. We agree.

The Supreme Court has held that where the parties have stipulated to a temporary custody arrangement, but there is no permanent judicial custody determination, the trial court must, in its discretion, devise a parenting plan that is in the child's best interest. (*In re Marriage of Burgess, supra,* 13 Cal.4th at pp. 31-32.) In *Burgess,* a move-away case, the parties had stipulated to a temporary custody arrangement, but there was no permanent judicial custody determination. The matter was therefore before the trial court for an initial permanent custody order. (*Id.* at p. 31.) The Supreme

Court held: "In an initial custody determination, the trial court has 'the widest discretion to choose a parenting plan that is in the best interest of the child.' (Fam. Code, § 3040, subd. (b).) It must look to *all the circumstances* bearing on the best interest of the minor child. (*Burchard* v. *Garay* (1986) 42 Cal.3d 531, 534 [229 Cal.Rptr. 800, 724 P.2d 486, 62 A.L.R.4th 237].) Family Code section 3011 lists specific factors, 'among others,' that the trial court must consider in determining the 'best interest' of the child in a proceeding to determine custody and visitation: '(a) The health, safety, and welfare of the child. [¶] (b) Any history of abuse by one parent against the child or against the other parent. . . . [¶] (c) The nature and amount of contact with both parents.' [¶] In addition, in a matter involving immediate or eventual relocation by one or both parents, the trial court must take into account the presumptive right of a custodial parent to change the residence of the minor children, so long as the removal would not be prejudicial to their rights or welfare. (Fam. Code, § 7501 ['A parent entitled to custody of the child has a right to change the residence of the child, subject to the power of the court to restrain a removal that would prejudice the rights or welfare of the child.'].) Accordingly, in considering all of the circumstances affecting the 'best interest' of minor children, it may consider any effects of such relocation on their rights or welfare." (*In re Marriage of Burgess, supra,* 13 Cal.4th at pp. 31-32, original italics.) The Supreme Court further held: "A trial court may [also] consider the extent to which the minor children's contact with their noncustodial parent will be impaired by relocating. In so doing, however, it is not restricted to any particular formula for contact or visitation; nor is it required to make a custody determination that preserves the predissolution status quo." (*Id.* at p. 36, fn. omitted.)

When, on the other hand, there is a final judicial custody determination, a parent seeking to modify the custody order must demonstrate "a significant change of circumstances" in order to justify a modification. (*Montenegro v. Diaz, supra,* 26 Cal.4th at p. 256; *In re Marriage of Burgess, supra,* 13 Cal.4th at p. 37.) This rule is an adjunct to the statutory best interest of the child test (Fam. Code, § 3040, subd. (b)) that governs a trial court's choice of a parenting plan. (*Montenegro v. Diaz, supra,* 26 Cal.4th at p. 256; *Burchard v. Garay, supra,* 42 Cal.3d at p. 535.) As explained by the Supreme Court: " '[The changed circumstance rule] provides, in essence, that once it has been established that a particular custodial arrangement is in the best interests of the child, the court need not reexamine that question. Instead, it should preserve the established mode of custody unless some significant change in circumstances indicates that a different arrangement would be in the child's best interest. The rule thus fosters the dual goals of judicial economy and protecting stable custody arrangements.' (*Burchard* [*v. Garay*], *supra,* 42 Cal.3d at p. 535.)" (*Montenegro v. Diaz, supra,* 26 Cal.4th

at p. 256.) The Supreme Court has further held: "In a 'move-away' case, a change of custody is not justified simply because the custodial parent has chosen, for any sound good faith reason, to reside in a different location, but only if, as a result of relocation with that parent, the child will suffer detriment rendering it ' "essential or expedient for the welfare of the child that there be a change." ' [Citation.]" (*In re Marriage of Burgess, supra,* 13 Cal.4th at p. 38; accord, *In re Marriage of Edlund & Hales* (1998) 66 Cal.App.4th 1454, 1468-1469 [78 Cal.Rptr.2d 671].)

In *Montenegro,* the Supreme Court recognized the practical reality that stipulated custody orders often are not intended to conclusively resolve the dispute. The court held: "[M]any stipulated custody orders are not intended to be final judgments. Child custody proceedings usually involve fluid factual circumstances, which often result in disputes that must be resolved before any final resolution can be reached. Although the parties typically resolve these disputes through stipulations confirmed by court order, they often do not intend for these stipulations to be permanent custody orders. Indeed, these temporary custody orders serve an important role in child custody proceedings, and our statutory scheme expressly provides for them. (See, e.g., [Fam. Code,] § 3061.) Because many parties would not enter into a stipulated custody order if a court might later treat that order as a final judicial custody determination, we must be careful in construing such orders. Otherwise, we may discourage these parties from entering into such stipulations." (*Montenegro v. Diaz, supra,* 26 Cal.4th at p. 258.) ▮ Therefore, the Supreme Court held, in a move-away case, "[W]e hold that a stipulated custody order is a final judicial custody determination for purposes of the changed circumstance rule only if there is a clear, affirmative indication the parties intended such a result." (*Ibid.*)

▮ In the present case, the trial court found the March 14, 2001, stipulated dissolution judgment included a final judicial custody determination. As a result, the trial court expressly refused to conduct a de novo review of custody and visitation utilizing the best interest of the child standard. In addition, the trial found no changed circumstances and thus denied the father's request for a child custody evaluation. We conclude the trial court erred in finding there was a clear, affirmative indication the parties intended the stipulation and resulting March 14, 2001, judgment to be a final judicial determination of custody. The parents stipulated, as reflected in the dissolution judgment, that they would have joint legal custody of the child; the mother would have "primary physical custody"; and the father would have "reasonable visitation." However, as noted previously, the judgment further recites: "In the event the parties are unable to resolve their custody and visitation issues, they shall agree upon a therapist or counselor

. . . to assist them in resolving their issues. . . . If after meeting with a therapist or counselor, the parties remain unable to resolve their differences, they shall make an appointment with the Conciliation Court . . . prior to either party filing a request with the Court for a hearing on the issue." There is no "clear, affirmative indication," as that term is used in *Montenegro,* that the parents intended the custody determination to be final. On the contrary, the language of the judgment, to which the parties consented, warrants the opposite conclusion—the parents disagreed and were to attempt to resolve the custody and visitation issues. (Cf. *Montenegro v. Diaz, supra,* 26 Cal.4th at p. 259; see Hogoboom & King, Cal. Practice Guide: Family Law, *supra,* ¶ 17:299.1, p. 17-70.) We conclude, therefore, that the March 14, 2001, order was not intended by the parties to be a final judicial determination of custody. Because there was no clear, affirmative indication the parties intended the stipulation and resulting March 14, 2001, judgment to be a final judicial determination of custody, the father was not required to show that a significant change of circumstances justified modifying the custody order. (*Montenegro v. Diaz, supra,* 26 Cal.4th at p. 256; *In re Marriage of Burgess, supra,* 13 Cal.4th at p. 37.) Accordingly, we reject the mother's argument that the father failed to meet his burden in that regard. Moreover, the trial court was required, exercising its wide discretion, to make an initial custody and visitation determination after considering *all* the circumstances bearing on the best interest of the child. (*In re Marriage of Burgess, supra,* 13 Cal.4th at pp. 31-32.) This the trial court failed to do. As a result, we will reverse the custody and visitation orders, and remand this matter for the trial court to exercise its wide discretion. Because we conclude the trial court acted beyond the scope of its allowable discretion in failing to consider de novo the child's best interest under all the circumstances, we need not address the parties' remaining arguments.

One final note is in order. The mother argues there is language in the March 14, 2001, judgment that reflects an affirmative indication the parties intended the stipulation be a final judicial determination of custody. No doubt, as noted previously, there is language which reflects the intention "to settle all rights and obligations" between the parties. (See pp. 944-945, *ante.*) However, the paragraphs containing the cited waiver language expressly state either "[e]xcept as otherwise expressly provided for in this Judgment" or "[e]xcept for the claims and demands and rights in this Judgment created against either of the parties hereto . . . ." The fairest reading of this language is that it excludes from the waiver of rights and duties the only portion of the stipulation that contains no finality—those matters relating to future efforts to resolve the custody issue. As noted previously, the judgment must be read as a whole. (*Lazar v. Superior Court, supra,* 16 Cal.2d at p. 622; *Yarus v. Yarus* (1960) 178 Cal.App.2d 190, 201 [3 Cal.Rptr.

50].) With respect, we reject the mother's contention that the agreement was intended to have the requisite finality in terms of custody and visitation issues.

C. *The Reconsideration Motion**

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

## IV. DISPOSITION

The custody and visitation orders entered on December 14, 19, and 21, 2001, are reversed. The appeal from the order denying reconsideration is dismissed. The matter is remanded for reconsideration consistent with the views expressed in this opinion. In the interests of justice, the parties are to bear their own costs on appeal.

Grignon, J., and Mosk, J., concurred.

---

*See footnote, *ante,* page 941.