Filed 2/18/21  In re A.J. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re A.J. et al., Persons Coming Under the Juvenile Court Law. | B305505 (Los Angeles County Super. Ct. No. 19CCJP07025) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. SAVANNAH R., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Pete R. Navarro, Commissioner.  Affirmed.

Nicole Williams for Defendant and Appellant.

Rodrigo A. Castro-Silva, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and William D. Thetford, Principal Deputy County Counsel, for Plaintiff and Respondent.

Savannah R. (mother) appeals from the juvenile court's order terminating its jurisdiction and issuing an exit order over one of her children, A.J., pursuant to Welfare and Institutions Code section 362.4.[1] Mother does not challenge the court's termination of jurisdiction over the child, or its exit order granting Salvador J. (father) sole legal and physical custody of A.J. with monitored visitation ordered for mother. Rather, she contends that the exit order impermissibly restricts the family court's authority to modify her visitation with A.J. in the future. We conclude that the order, properly construed, places no limitations on the family court's authority to modify the order at a later time. As so construed, we affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

A.J. (born Feb. 2017) and her half-siblings, K.E. and A.E., came to the attention of the Los Angeles County Department of Family and Children Services (DCFS) in October 2019 after mother gave birth to A.E. and tested positive for methamphetamine and Xanax.[2] DCFS filed two section 300 petitions alleging the children were at risk of serious harm based on mother abusing drugs while pregnant with A.E., which caused the child to be born with a detrimental condition; mother's history of abusing drugs while K.E. was in her care; and mother's

[1]    Undesignated statutory references are to the Welfare and Institutions Code.

[2]    The jurisdiction and disposition orders over K.E., A.E., and their father are not at issue in this appeal. We limit our recitation of the facts as to A.J.

2

history of mental illness. The petitions named father as a noncustodial parent.

At the time DCFS filed its initial petition on behalf of A.J., the child was residing with maternal grandmother in Fort Bragg, California, where father also resided. On November 4, 2019, the court detained A.J. and set a pretrial release investigation hearing for later in the month, and an adjudication hearing for December 20, 2019.

Father submitted to the court's jurisdiction at the pre-release investigation hearing, and the court found him to be A.J.'s presumed father. After finding him to be non-offending, the court placed A.J. in his care under the supervision of DCFS.

On December 9, 2019, DCFS filed a first amended petition (FAP) on behalf of A.J. and her half-siblings. In addition to the allegations set forth in the initial petitions, the FAP alleged that mother had engaged in multiple instances of domestic violence against maternal grandmother, and against K.E. and A.E.'s father.

In a jurisdiction/disposition report, DCFS recommended that the court sustain the petitions, declare A.J. a dependent child, place the child in father's custody, and terminate jurisdiction with an exit order granting him sole physical custody, joint legal custody, and weekly monitored visits for mother. The court continued the adjudication hearing to January 15, 2020.

At the adjudication and disposition hearing, the court sustained a total of four section 300, subdivision (b) counts on behalf of A.J. The court declared the child a dependent of the court, ordered A.J. to be placed with father, and granted father full legal and physical custody.

3

In granting mother monitored visitation, the court stated: "[T]he basis for monitor restriction is mother's untreated -- unsuccessfully treated substance abuse and mental health issues that . . . are presented."  The court's order terminating jurisdiction over A.J. was stayed pending receipt of the exit order.

On January 21, 2020, the juvenile court issued its exit order granting father sole legal and physical custody, and granting mother weekly monitored visitation.  The order stated: "The Court ordered monitored visits for the mother due to her untreated substance abuse and mental health issues.  In order for [m]other's visits to be liberalized, the Court expects her to complete a substance abuse program, show an extended period of sobriety, and make progress in mental health treatment."  Upon issuance of the order, the court terminated jurisdiction over A.J.

Mother filed a timely notice of appeal challenging the exit order. (§§ 252, 253, 395, subd. (a)(2); *In re Clifford C.* (1997) 15 Cal.4th 1085, 1093–1094, fns. 5–6.)

## DISCUSSION

Mother's contends that the exit order impermissibly conditioned the family court's power to liberalize mother's visitation with A.J. in the future.  We disagree.

When the dependency court terminates jurisdiction over a child, it has authority to issue an order determining custody over and visitation with a child.  (§ 364.2, subd. (a).)  The custody and visitation order, commonly referred to as an "exit order," may be filed in a preexisting

family law case, or may serve "as the sole basis for opening a file in the superior court of the county in which the parent, who has been given custody, resides." (§ 362.4, subds. (a), (c); *In re T.S.* (2020) 52 Cal.App.5th 503, 513.)

The exit order constitutes a final judgment and shall remain in effect after jurisdiction is terminated. (§ 302, subd. (d).) Any order issued under section 362.4 will remain in effect "until modified or terminated by a subsequent order of the superior court" based on a showing there has been a significant change of circumstances, and that modification of the order is in the child's best interests. (§§ 302, subd. (d), 362.4, subd. (b); see *Heidi S. v. David H.* (2016) 1 Cal.App.5th 1150, 1163–1164 (*Heidi S.*); *In re John W.* (1996) 41 Cal.App.4th 961, 973.) The juvenile court does not have the authority or discretion to impose a condition on the family court's ability to modify an exit order. (*In re Cole Y.* (2015) 233 Cal.App.4th 1444, 1456 (*Cole Y.*).)

We generally review a juvenile court's decision to terminate jurisdiction and issue an exit order for an abuse of discretion. (*In re M.R.* (2017) 7 Cal.App.5th 886, 902; *Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 300 (*Bridget A.*).) However, because this appeal requires us to interpret the exit order to determine if the juvenile court improperly conditioned the family court's authority to modify mother's visitation with A.J., our review is de novo. (See *In re Marriage of Richardson* (2002) 102 Cal.App.4th 941, 949; *Bridget A.*, *supra*, at p. 301.)

When determining the meaning and effect of the exit order in this case, we adhere to the rules governing the interpretation of writings. (*In re Marriage of Richardson, supra,* 102 Cal.App.4th at p. 948.) We construe the order as a whole to effectuate its obvious intention and may not seize upon a clause or portion of the judgment. (*Id.* at pp. 948–949.) Whenever a provision is susceptible to at least two interpretations, we must construe the provision so as to make it "'lawful, operative, definite, reasonable and capable of being carried into effect,'" and must avoid an interpretation that would make it "'extraordinary, harsh, unjust, inequitable or which would result in absurdity.' [Citation.]" (*In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, 989.)

As noted above, the exit order in this case stated: "In order for [m]other's visits to be liberalized, the Court *expects* her to complete a substance abuse program, show an extended period of sobriety, and make progress in mental health treatment." (Italics added.) Despite their disagreement as to which definition of "expects" controls, the parties generally agree that the word has different definitions, including: "to consider probable or certain"; "to consider reasonable, due, or necessary"; "to consider bound in duty or obligated"; "to anticipate or look forward to the coming or occurrence of"; and "await." (Accord, *SN Sands Corp. v. City and County of San Francisco* (2008) 167 Cal.App.4th 185, 193 ["'The plain and ordinary meaning of "expect," . . . is to anticipate, to consider probable or certain'"].)

To make the order lawful and operative, we construe the portion of the order that the juvenile court "expects" mother to complete a

6

substance abuse program and show progress in sobriety and mental health treatment to mean that it "anticipate[s] or look[s] forward to [the] occurrence of" those events prior to another court liberalizing visitation.  (See *In re Marriage of Falcone & Fyke, supra*, 203 Cal.App.4th at p. 989.)  In other words, we construe the language in the order not as a condition to the liberalization of visitation (*Cole Y., supra*, 233 Cal.App.4th at p. 1456), but as encouragement to mother to alleviate the conditions giving rise to dependency jurisdiction in the first place (*In re Marriage of Richardson, supra*, 102 Cal.App.4th at p. 948), and aid in demonstrating changed circumstances should she seek to modify visitation in the future.

*Cole Y., supra*, 233 Cal.App.4th 1444, the single case on which mother relies, is inapposite.  In that case, the juvenile court's exit order granted father monitored visitation, and stated that "'in order to modify the court's orders, . . . Father will have to complete . . . a full drug program with weekly testing, a parenting program and individual counseling.'"  (*Id.* at p. 1451.)  The court of appeal reversed the exit order "to the extent it conditioned the family court's modification of the juvenile court's . . . exit order upon proof of [the father's] completion of drug and parenting programs and counseling."  (*Cole Y., supra*, 233 Cal.App.4th at p. 1446.)  The court reasoned that section 302, which sets forth the procedure by which a parent may seek modification of an exit order, did not authorize the juvenile court "to condition" the family court's modification of the exit order upon a parent's completion of specific programs or events.  (*Id.* at p. 1456.)

The unambiguous language in the juvenile court's exit order in *Cole Y.* is not present in this case. We do not construe the order here as placing a condition or limitation on the family court's authority to modify the order at a later time. Mother remains free to seek a modification of the order based on whatever constitutes "a significant change of circumstances" that are in A.J.'s best interests (§ 302, subd. (d)), including (but not limited to) alleviation of the reasons for the assertion of dependency jurisdiction. The family court also remains free to modify or terminate the exit order based on its own findings of changed circumstances and the child's best interest. (*Heidi S.*, *supra*, 1 Cal.App.5th at p. 1164.)

**DISPOSITION**

The January 21, 2020 order of visitation, properly construed, places no limitations on the family court's authority to modify the order at a later time. As so construed, the order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

WILLHITE, J.

We concur:

MANELLA, P. J.

COLLINS, J.

8