Filed 7/22/21  Marriage of Sloan CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re Marriage of SCOTT and JENNIFER SLOAN. | 2d Civ. No. B309309 (Super. Ct. No. 1469098) (Santa Barbara County) |
| SCOTT J. SLOAN,<br><br>     Appellant,<br><br>v.<br><br>JENNIFER BUBALO SLOAN,<br><br>     Respondent. | |

Father appeals an order denying his motion for a change in custody and visitation with his daughter.  We affirm.

## FACTS

Scott and Jennifer Sloan were married for seven years before separating and ultimately dissolving their marriage.  A daughter of the marriage, B., was born in February 2014.

Jennifer moved to Pasadena and Scott remained in Santa Barbara after the dissolution.[1]

In September 2017, the parties stipulated to a judgment that includes custody provisions. The parties agreed that Jennifer would have "primary physical custody" of B. and Scott would have "secondary physical custody" pursuant to the "time-sharing plan" set forth in the stipulated judgment.

In addition to certain holidays, the time-sharing plan gives Scott custody every other weekend and weekly midweek overnight visits with B.

The time-sharing plan recognized that the midweek overnight visits would not be practical once B. enters kindergarten. The plan provides: "The Parties acknowledge that when [B.] begins kindergarten, it will not be possible for [Scott] to exercise the mid-week visits set forth in hereinabove, assuming [Scott] is residing in Santa Barbara and/or he is residing more than 50 miles from [B.'s] school. Therefore, at least sixty (60) days prior to [B.] commencing kindergarten, the Parties shall meet and confer, with a mutually agreeable therapist/mediator if necessary solely with regard to establishing appropriate custodial time for [Scott] and [B.] in replacement of his midweek visit."

Scott used a second home he owned in Pasadena for the midweek visits. Santa Barbara remained his principal residence.

In March 2019, the parties entered into a stipulation modifying child custody. The stipulation did not end the midweek visits. Instead, it adjusted the pick-up and drop-off times and changed the summer schedule to alternate the midweek visits between Pasadena and Santa Barbara. For

---

[1] For the sake of clarity, we refer to the parties by their first names. No disrespect is intended.

unexplained reasons, the stipulation was not signed and filed until August 2019.

In April 2020, California issued stay-at-home orders in response to the COVID-19 pandemic. Scott notified Jennifer that it was no longer safe to continue the midweek visits and that it was in B.'s best interest that they be discontinued. The visits every other weekend, however, continued.

Scott wanted an adjustment in his visitation to compensate for the loss of his midweek visits. But, despite mediation, the parties could not agree.

In August 2020, Scott filed the instant motion to modify custody to replace the midweek visits with more weekend and summer visitation. Among other modifications, Scott requested the first, third, and fifth weekend of each month instead of every other weekend, and every other week during the summer instead of every other weekend. Scott also wanted additional custody weekends where Jennifer's holiday or vacation custody would supplant Scott's regular visitation.

Jennifer opposed Scott's motion. Jennifer proposed that Scott have visitation every other weekend during the school year from Friday to Sunday and during the summer every other weekend from Thursday to Sunday. B. spends two weeks with each parent during the summer. Scott has B. for one-half of the holidays.

Neither Scott nor Jennifer proposed reinstating the midweek visits.

*Ruling*

The trial court stated that it is very familiar with the case; it has been heavily litigated for years. The court found that the paramount need for continuity and stability in custody

arrangements and the harm that may result from disruption of the established patterns of care weigh heavily in favor of maintaining ongoing custody arrangements. (Citing *In re Marriage of Burgess* (1996) 13 Cal.4th 25, 33.) The court found that continuity and stability are in the best interest of the child. The court ruled that "Scott has not met his burden of proof to establish that upending [B.'s] schedule is in her best interest." The trial court ordered the custody schedule proposed by Jennifer.

Scott made a motion to clarify the trial court's order. The court treated it as a motion for reconsideration and denied the motion.

## DISCUSSION

### I

### *Legal Standard*

Scott contends that the trial court applied the wrong legal standard.

Scott concedes that the standard of review of a custody order is abuse of discretion. (*In re Marriage of Richardson* (2002) 102 Cal.App.4th 941, 948.) He claims, however, that the trial court abused its discretion by applying the wrong legal standard in requiring him to show a change of circumstances. Scott relies on the court's finding that "[he] has not met his burden of proof to establish that upending [B.s] schedule is in her best interest."

Scott argues that because the original judgment did not contain a final custody order, the legal standard is best interest of the child, and that he need not show a change of circumstances. (Citing *In re Marriage of Richardson*, *supra* 102 Cal.App.4th at p. 952.) In addition, Scott points out that the best interest of the child standard, and not the changed circumstances rule, applies

4.

where, as here, a parent requests only a change in parenting or visitation arrangement, not amounting to a change from joint to sole custody or vice versa. (*In re Marriage of Lucio* (2008) 161 Cal.App.4th 1068, 1072.)

But the trial court applied the proper legal standard of the best interest of the child. The court stated in its ruling, "When determining the best interest of the child, stability and continuity are paramount." Accordingly, the order for custody and visitation is very close to what B. had already been experiencing.

The trial court's finding that Scott failed to meet his burden, to show that changing B.'s schedule is in her best interest, did not require Scott to show a change of circumstances. All Scott had to show is that it is in B.s best interest to adopt his proposed custody schedule. Scott failed to show that.

Nowhere in the trial court's ruling does it mention changed circumstances or any similar term. There is simply no basis for claiming the court applied the wrong legal standard.

For the first time in his reply brief, Scott contends that reversal is required even assuming the trial court applied the best interest of the child standard. Scott cites no reason why he could not have raised this contention in his opening brief. The court's ruling is unequivocally based on the best interest of the child standard. Points raised for the first time in the reply brief will not be considered. (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 723, p. 790.)

*Terms of Original Judgment*

Scott contends the trial court abused its discretion in failing to consider the terms of the original judgment.

Scott points out that under the terms of the original stipulated judgment, once B. starts kindergarten, the parties

shall meet and confer for the purpose of "establishing appropriate custodial time for [Scott] and [B.] in *replacement* of his midweek visit." (Italics added.) Scott argues the trial court's order did not replace his lost midweek custodial time; instead the order diminished it.

Scott points to nothing in the record to show that the trial court did not consider the original judgment. The court's order did increase Scott's biweekly custodial time during the summer by adding a Thursday to the weekend visits. Nothing in the judgment requires that the replacement be one-for-one, or that adjustments cannot be made that have the effect of diminishing Scott's total visitation time.

In any event, although the parents' stipulations may be helpful, the trial court is not bound by them. (*Stewart v. Stewart* (1955) 130 Cal.App.2d 186, 193.) Instead the trial court is tasked with making an independent determination of the best interest of the child. (*Ibid.*) That is what the trial court did here.

*Framework and Approach*

Scott contends the trial court, across the board, applied the wrong framework and approach.

The trial court is highly experienced and is very familiar with this case. The case has been heavily litigated for years. Scott's most recent request to modify custody prior to this one was heard less than a year prior. The court is very familiar with the parties, the original stipulated judgment, and with B.'s needs. The court applied the correct best interest of the child standard.

The trial court considered Scott's claim that the custody order creates significant gaps in his custody and rejected it. Scott points to no evidence whatsoever that the custody order as it stands will have a negative effect on B. or his relationship with

her. The trial court could reasonably conclude that the order fulfills the policy of ensuring that B. has frequent and continuing contact with both parents. (Fam. Code, § 3020, subd. (b).)

Scott believes that what he views as an adverse outcome is a result of Jennifer misleading the trial court as to the legal standard and her ad hominem attacks against him. But the court's ruling shows that the court applied the correct legal standard, and it was based on B.'s need for continuity and stability, not on Jennifer's personal attack against Scott.

*Factual Assumptions*

Scott contends the trial court's order was made on the erroneous factual assumptions that he sought to increase his custody, and that the order gave B. contact with him consistent with or similar to the stipulated judgment.

Scott claims that, in fact, under his proposal, his total time with B. would be reduced considering the loss of his midweek visits. In addition, he claims the order was neither consistent with nor similar to what is required under the stipulated judgment.

Scott misrepresents the trial court's ruling. The court did not find or assume that Scott sought to increase the total amount of his custody time or that the court's order was consistent with the judgment. The court was simply summarizing the position of the parties.

The trial court stated: "[Scott] seeks to expand his custodial time to the first, third and fifth weekends of the month. He seeks to change the exchange location. He seeks modifications in the holiday schedule and the summer schedule, including a two-week consecutive block of vacation time for each party. [¶] Jennifer has opposed Scott's requests. She contends

7.

he is seeking to increase his custodial time beyond the agreements the parties already reached in the Judgment and subsequent orders and in a manner that is contrary to the status quo and not in the child's best interest."

First, the trial court accurately stated that "[Scott] seeks to expand his custodial time to the first, third and fifth weekends of the month." Scott had only every other weekend.

Second, simply because the trial court ruled generally in Jennifer's favor does not mean it adopted all her contentions. The court's ruling was based solely on consistency and stability of custody arrangements being in B.'s best interest.

The judgment (order) is affirmed. Costs are awarded to respondent.

NOT TO BE PUBLISHED.


GILBERT, P. J.

We concur:


YEGAN, J.


PERREN, J.

8.

Donna D. Geck, Judge

Superior Court County of Santa Barbara

_____

Wasser, Cooperman & Mandles, Melanie D. Mandles, Jennifer R. Mora; Misho Law Group, Jacqueline Misho; Greines, Martin, Stein & Richland, Robert A. Olson and Edward L. Xanders for Plaintiff and Appellant.

Kirker|Wright Law Group, Vanessa Kirker Wright; Drury Pullen and Susanna V. Pullen for Defendant and Respondent.