Filed 2/24/26  In re A.L. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re A.L., a Person Coming Under the Juvenile Court Law. | H053519 (Santa Cruz County Super. Ct. No. 22JU00232) |
| SANTA CRUZ COUNTY HUMAN SERVICES DEPARTMENT, Plaintiff and Respondent, v. A.L., Defendant and Appellant. | |

Mother appeals from a juvenile court's "exit order" terminating dependency jurisdiction and determining parental custody and visitation as to minor A.L.  (Welf. & Inst. Code, § 362.4, subd. (a).)[1]  The pertinent portion of the exit order provides that "[p]rior to any order for unsupervised visits," mother "must demonstrate" compliance with a series of enumerated conditions.  Mother's sole claim of error is that the exit order improperly limits the family court's authority to modify her supervised visitation with the minor.  We will strike the portion of the exit order that would impermissibly limit the family court's authority to modify mother's visitation arrangements but will affirm as modified.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

## I.    BACKGROUND

### A.    *The Section 300 Petition*

The Santa Cruz County Human Services Department filed a dependency petition with respect to then four-year-old A.L., after mother was arrested for driving under the influence, and officers found A.L. home alone with bottles of medication close by, minimal food in the refrigerator, and the house in disarray.  (§ 300, subd. (b).)  The petition alleged that mother's substance abuse issue was negatively impacting her ability to care for A.L.  The petition also alleged that father, in custody at the time, had a history of substance abuse and domestic violence.

### B.    *Family Reunification and Maintenance*

The court sustained the petition and removed A.L. from mother's care.  Finding that placement with father would be detrimental, A.L. was placed in foster care, and the court ordered reunification services for both parents.  Over the next year, mother and father participated in their case plans and received generally positive reviews.  At the 12-month reunification review, the court, following the department's recommendation, ordered A.L. returned to the care of mother and father, with shared physical custody and family maintenance services.  A.L. began splitting time between her parents in their respective homes and appeared to make good adjustment to her new schedule.

While the parents initially worked cooperatively with each other, mother soon became concerned over the quality of father's parenting, and those concerns escalated into seeking a restraining order against father, making unsubstantiated allegations, and taking A.L. to the emergency room to be examined for alleged sexual abuse.  Mother also suffered relapses with alcohol, struggled with attending substance abuse group meetings, and failed to prioritize her mental health.  A psychological evaluation resulted in mother being diagnosed with several mental health disorders.

**C.** *Section 388 Modification*

Shortly after the 12-month family maintenance review, the department moved to modify the custody order under the authority of section 388, to grant sole physical custody of A.L. to father. The department reported that mother had engaged in an "escalating pattern of concerning anxious and paranoid behavior as well as neglect of [A.L.]." Specifically, mother continued to fabricate allegations against father, had taken A.L. for additional emergency room visits, and had placed herself and A.L. in proximity to a person against whom she had a restraining order. Mother had failed to provide A.L. with appropriate medical treatment for an infection, did not keep father updated on A.L.'s medical care, and had left A.L. with a third party and did not pick her up. Mother had also failed to follow through on her own appointments with mental health professionals and social workers. After a contested section 388 hearing, the court granted the department's modification request and awarded sole physical custody of A.L. to father, with supervised visits to mother.

**D.** *The Exit Order*

At the 18-month family maintenance review, the department recommended that the court terminate dependency jurisdiction and grant sole physical custody of A.L. to father, with supervised visits to mother.[2] After a contested hearing, during which father testified and mother made a statement asking for full legal and physical custody of A.L.[3], the juvenile court entered a final judgment that (1) terminated dependency jurisdiction, (2) granted legal and physical custody of A.L. to father, and (3) ordered a minimum of

---

[2] The department initially recommended that mother and father continue to share joint legal custody but ultimately took no position on this issue, given father's and A.L.'s objection at the hearing.

[3] The juvenile court had informed mother that she needed to be personally present if she wished to testify. Mother was not personally present, appearing late by video instead. The court did not permit mother to testify but allowed her to make a statement setting forth her position on custody and visitation.

3

one supervised visit per week to mother. The court further stated that "[b]efore the supervision of the visits can be changed," mother must show that she has made substantial progress in her positive communication with father, and "there must be at least 60 days of positive communication. Mother must also demonstrate engagement with a psychiatrist and . . . follow[] through with the recommendations of that psychiatrist," and she "must demonstrate a minimum of 60 days of sobriety and engagement with substance use disorder services."

This portion of the court's exit order was memorialized into an accompanying JV 206 form, as follows: "Prior to any order for unsupervised visits, Mother must demonstrate 60 days of positive communication with the Father on My Family Wizard, or other application; Mother must demonstrate engagement with a psychiatrist, and that she is following the recommendations of the psychiatrist; Mother must demonstrate a minimum of 60 days of sobriety, and engagement with [substance use disorder] services."

Mother timely appealed.

## II.    DISCUSSION

A juvenile court's exit order is "a final judgment and . . . remain[s] in effect after [dependency] jurisdiction is terminated." (§ 302, subd. (d).) The order "shall not be modified" in a subsequent family court proceeding unless the court finds (1) "that there has been a significant change of circumstances since the juvenile court issued the order," and (2) "modification of the order is in the best interests of the child." (*Ibid*.)

As a part of an exit order, the juvenile court may issue " 'collateral orders, such as counseling orders, that are reasonably related to the custody and visitation orders.' " (*In re Chantal S.* (1996) 13 Cal.4th 196, 204 (*Chantal*); see also § 362, subd. (d) ["juvenile court may direct any reasonable orders to the parents or guardians of the child," including "a direction to participate in a counseling or education program"].) But the juvenile court may not condition the family court's future modification of the exit order upon the parties' completion of those programs. (See *In re Cole Y.* (2015) 233 Cal.App.4th 1444,

4

1456 (*Cole Y.*).) Instead, "the decision to modify an exit order . . . is, within the province of the family court." (*Ibid.*)

## A. *Standard of Review*

We normally review a juvenile court's exit orders for an abuse of discretion. (*In re J.M.* (2023) 89 Cal.App.5th 95, 113; *In re Marriage of Richardson* (2002) 102 Cal.App.4th 941, 949 (*Richardson*).) But because this appeal requires us to interpret the exit order to determine its meaning and effect—whether the order improperly limits the family court's authority, our review of the order is de novo. (See *Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 301 [issue concerning "the scope of the juvenile court's discretion," rather than the "proper exercise of that discretion," is "a question of law"].)

We construe the exit order " ' " 'as a whole to effectuate [its] obvious intention.' " ' " (*Richardson*, *supra*, 102 Cal.App.4th at pp. 948–949.) When a provision within the order is susceptible to two interpretations, we must construe the provision to make it " 'lawful, operative, definite, reasonable and capable of being carried into effect,' " and must avoid an interpretation that would make it " 'extraordinary, harsh, unjust, inequitable or which would result in absurdity.' " (*In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, 989.)

## B. *Forfeiture and Ripeness*

Preliminarily, the department contends that mother forfeited this claim by failing to raise it in the juvenile court. In *Cole Y.*, the court held that an analogous claim "cannot be forfeited" because the claim "goes to the allocation of jurisdiction between the dependency and family courts, a legal issue." (See *Cole Y.*, *supra*, 233 Cal.App.4th at p. 1456, fn. 4.) But there is no question that the juvenile court had both the " ' "power to hear . . . the case" ' " and authority over the subject matter and parties. (See *People v. Lara* (2010) 48 Cal.4th 216, 224 [defining fundamental lack of jurisdiction as " ' "an entire absence of power to hear or determine the case, [or] an absence of authority over

5

the subject matter or the parties" ' "].) Rather, the claim here is that the court acted *in excess* of its jurisdiction by improperly conditioning the family court's future exercise of authority to modify the exit order. (See *id.* at pp. 224–225 [explaining that a court exceeds its jurisdiction when it has jurisdiction but acts beyond its prescribed authority, provides unwarranted relief, or acts " ' "without the occurrence of certain procedural prerequisites" ' "].) A claim that a court has acted in excess of jurisdiction is subject to forfeiture. (See *People v. Gerold* (2009) 174 Cal.App.4th 781, 787 [distinguishing " 'a lack of fundamental jurisdiction,' " which " 'may be raised at any time,' " from " 'a challenge to a ruling in excess of jurisdiction,' " which " 'is subject to forfeiture if not timely asserted' "]; see also *In re S.B.* (2004) 32 Cal.4th 1287, 1293 (*S.B.*) ["Dependency matters are not exempt from [the forfeiture] rule"], superseded by statute on other grounds.)

We recognize, however, that the "application of the forfeiture rule is not automatic," even if "the . . . discretion to excuse forfeiture should be exercised rarely and only in cases presenting an important legal issue." (*S.B.*, *supra,* 32 Cal.4th at p. 1293.) We will decline to apply the general rules of forfeiture here, both because the exit order, if permitted to stand, will burden mother's ability to modify her visitation schedule beyond the limits of section 302, subdivision (d), and because the facts underlying mother's claim "are not disputed and the issue raises only a question of law." (*In re Xavier R.* (2011) 201 Cal.App.4th 1398, 1412 ["[B]ecause the facts . . . are not disputed and the issue raises only a question of law, the general rule [of forfeiture] does not apply"].)

The department next argues that mother's claim is unripe because she is relying "on the speculative assumption that a future family court reviewing [the exit order] will adopt the juvenile court's orders without consideration of significant change in circumstances or the child's best interest." Until that happens, the department posits,

6

mother is not aggrieved.  The department's application of the ripeness doctrine sweeps too broadly.

Unripe cases are " '[t]hose in which parties seek a judicial declaration on a question of law, though no actual dispute or controversy ever existed between them requiring the declaration for its determination.' " (*Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th 1559, 1573.)  Such is not the case here, where the juvenile court has already issued a final judgment enforceable in subsequent family court proceedings.  (See *Heidi S. v. David H. (*2016) 1 Cal.App.5th 1150, 1169 (*Heidi S.*) ["[O]nce the juvenile court issued the Exit Order and its jurisdiction ended, the family court had the responsibility to enforce the Exit Order"].)  Of course, the family court may choose to modify the exit order without regard to the enumerated conditions, upon finding a significant change of circumstances and that the proposed modification would be in the best interests of A.L.  (§ 302, subd. (d).)  But if mother did not challenge the exit order, the family court might plausibly enforce the juvenile court's limitation, reasoning that mother had waived any claims of error by failing to timely appeal.  (See *Heidi S.*, at p. 1166 [suggesting that mother's request for modification of visitation after failing to appeal exit order raised concerns that she was "improperly" seeking reconsideration of exit order].)  For the sake of clarity in the superior court, we are not inclined to dismiss as unripe mother's contention relating to the exit order on no more than a bare assumption that a future court would pay it no heed.

## C. *The Juvenile Court's Authority*

On the merits, mother relies on *Cole Y.* for the proposition that the exit order improperly conditions the family court's future ability to modify the order upon mother's compliance with the juvenile court's collateral orders.  We agree.  The exit order challenged in *Cole Y.* provided that " 'to modify the [juvenile] court's orders, . . . Father will have to complete . . . a full drug program with weekly testing, a parenting program and individual counseling.' " (*Cole Y.*, *supra*, 233 Cal.App.4th at p. 1451.)  In reversing,

the court held that while a juvenile court has broad discretion to order a party's participation in counseling and other programs, it did not have the authority "to condition the *family court's* modification of an exit order upon the completion of counseling and other programs in the face of a statute—section 302, subdivision (d)—that requires a particular finding before the family court may modify such an exit order." (*Id.* at p. 1456.)

The exit order here similarly provides: "Prior to any order for unsupervised visits, Mother must demonstrate 60 days of positive communication with the Father on My Family Wizard, or other application; Mother must demonstrate engagement with a psychiatrist, and that she is following the recommendations of the psychiatrist; Mother must demonstrate a minimum of 60 days of sobriety, and engagement with [substance use disorder] services." As in *Cole Y.*, this order purports to restrict the family court's ability to apply section 302, subdivision (d) and modify visitation, here by predicating "any order for unsupervised visits" upon mother's compliance with the enumerated conditions. While the extent of mother's compliance with the conditions imposed may well inform the family court's evaluation of a future request for unsupervised visitation, such a decision is "within the province of the family court," subject only to the limitations of section 302, subdivision (d). (*Cole Y.*, *supra*, 233 Cal.App.4th at p. 1456.)

*In re D.B.* (2020) 48 Cal.App.5th 613 (*D.B.*), cited by the department, is distinguishable. In *D.B.*, the juvenile court in its exit order granted the mother legal and physical custody of the minor and ordered that the noncustodial "[f]ather 'may have monitored visitation upon completion of or a showing of substantial compliance in individual counseling and five conjoint counseling sessions with the child.' " (*D.B.*, at p. 626.) In rejecting father's argument that these terms impermissibly restricted the family court's power to modify custody or visitation, the court explained: "[T]he juvenile court did not restrict the family court's power. . . . What the juvenile court said about counseling does not limit the family court's power at all. The juvenile court order

8

does not tell the family court what to do.  It tells Father and Mother what to do." (*Id.* at p. 627.)

We understand the reviewing court in *D.B.* to have construed the disputed condition in the light most favorable to the judgment, as self-executing regulations of the parents' relationship, not limitations on the family court.  (See *In re Marriage of Falcone & Fyke*, *supra*, 203 Cal.App.4th at p. 989 [explaining that an ambiguous order should be given " 'the construction that [would] make the [order] lawful, operative, definite, reasonable and capable of being carried into effect' "].)  In this light, the condition requires mother to cooperate with, and facilitate, father's supervised visits with the minor upon father's substantial compliance with the counseling requirements, without additional intervention from the family court.  (See *D.B.*, *supra*, 48 Cal.App.5th at p. 626.)  By contrast, the express limitation here, by its plain terms, would restrict when a family court may order unsupervised visitation.  The "[p]rior to any order" restriction here extends beyond merely "tell[ing] . . . mother what to do," impermissibly purports to limit the authority and discretion of the family court to evaluate whether changed circumstances are "significant" and whether supervised visitation has ceased to be in the minor's best interest.[4]  (§ 302, subd. (d); cf. *D.B.*, at p. 627.)  The juvenile court here

---

[4] In the family law context, "[t]he changed circumstance rule applies to a modification request seeking a change in a final determination of custody" but "does not apply to a modification request seeking a change in the parenting or visitation schedule." (*In re Marriage of Lucio* (2008) 161 Cal.App.4th 1068, 1077.)  Courts have interpreted the twofold burden of section 302, subdivision (d), however, to apply to visitation and custody orders alike.  (See *Heidi S.*, *supra*, 1 Cal.App.5th at p. 1164 ["before modifying the *visitation* schedule set forth in the exit order, the family court must find a significant change of circumstances that warrants that modification" (italics added)]; *In re Marriage of David & Martha M.* (2006) 140 Cal.App.4th 96, 103 ["section 302, subdivision (d) compelled the family court to find a significant change of circumstances and that the modification was in the best interests of the child before the family court modified the juvenile court visitation order"].)

acted in excess of its jurisdiction by conditioning the family court's authority to modify its exit order upon mother's compliance with the enumerated conditions.

Like mother, however, we do not question the juvenile court's apparent determination that regulating mother's communications with father and requiring her to participate in mental health treatment are in the minor's best interest. And in terminating dependency jurisdiction, the juvenile court retains authority to impose conditions on the parents for the minor's benefit. (See, e.g., *Chantal*, *supra*, 13 Cal.4th at p. 206 [holding that juvenile court in terminating jurisdiction and ordering parental counseling was not bound by requirements of Fam. Code, § 3190].) We understand the challenged provision of the exit order to represent the juvenile court's intention to do so, even though the scope of its order impermissibly limited the family court. For this reason, we decline mother's request to simply strike the substantive conditions in their entirety; we will instead strike only the clause, "[p]rior to any order for unsupervised visits . . . ."

## III.   DISPOSITION

We modify the July 30, 2025 exit order to delete the following language: "Prior to any order for unsupervised visits" from item 2.a. As modified, the order is affirmed.

10

_____

LIE, J.

WE CONCUR:

_____

GROVER, Acting P. J.

_____

WILSON, J.

*In re A.L.; Santa Cruz County Human Services Department v. A.L.*
H053519