Filed 4/29/26  In re M.F. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION TWO

| | |
|---|---|
| In re M.F., a Person Coming Under the Juvenile Court Law. | B344562 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>H.F. et al.,<br><br>Defendants and Appellants. | Los Angeles County Super. Ct. No. 24CCJP01169A |

APPEAL from orders of the Superior Court of Los Angeles County, Juan M. Valles, Commissioner. Affirmed with directions.

Megan Turkat Schirn, under appointment by the Court of Appeal, for Defendant and Appellant H.F.

Benjamin Ekenes, under appointment by the Court of Appeal, for Defendant and Appellant N.S.

No appearance for Plaintiff and Respondent.

_____

H.F. (Father) and N.S. (Mother) both appeal dispositional orders concerning minor daughter M.F.[1] pursuant to a final judgment, following a Welfare and Institutions Code section 364 review hearing. (Undesignated statutory references are to the Welf. & Inst. Code.)

Father appeals the award of joint physical custody rather than sole physical custody to him, and the order that Father pay one-third of the transportation costs between his home in Tennessee and Los Angeles, arguing he should pay nothing.

Mother appeals the order for joint legal custody to the extent it granted Father tie-breaking authority, and also the order requiring Father to pay one-third of the transportation costs, arguing the juvenile court should have ordered Father to bear all the costs or at most, that parents should equally bear such expenses. Finally, Mother argues that at minimum, the record should be corrected to accurately reflect the court's oral ruling.

Counsel for the Los Angeles County Department of Children and Family Services (DCFS) and for M.F. informed this court they are taking no position on this appeal.

We affirm, with instructions.

## BACKGROUND

### I.  Jurisdiction

In April 2024, the juvenile court authorized DCFS to detain M.F., then nine years old. DCFS filed a petition under section 300, subdivision (b)(1), seeking jurisdiction over both M.F. and her younger half brother K.S., then four years old.[2] The basis for detention were allegations that on multiple occasions, Mother

---

[1]  Mother refers to the minor as M.S. and Father refers to her as M.F. We use the initials M.F. to reflect a name change ordered in 2020.

[2]  The children have different fathers. Only the orders as to M.F. are at issue in this appeal.

had failed to provide appropriate supervision for K.S., resulting in him being on the street alone. On one occasion, after Mother had left K.S. in the sole care of M.F., K.S. nearly drowned and required immediate medical attention. In addition, DCFS alleged Mother had a history of substance abuse including cocaine and was a current abuser of marijuana, rendering her incapable of providing regular care and supervision, endangering the children's physical health and safety.

At a hearing the next day, the juvenile court found Father the presumed father of M.F. The court released her to his care in Tennessee, with monitored visits to Mother.

The juvenile court held an adjudication and dispositional hearing in June 2024. The court sustained both counts with minor modifications. The court noted the long history of referrals based on Mother's neglectful behavior and the evidence supporting Mother's marijuana use, much of which was credibly described by M.F., which affected her ability to care for both children.

The juvenile court continued the dispositional portion of the hearing, in part because it wanted a fuller evaluation of Father's request to close his portion of the case with a juvenile custody order.

At the continued dispositional hearing in July 2024, DCFS recommended M.F. be released to Father, but that the case remain open so DCFS could monitor M.F.'s safety in Tennessee. M.F.'s counsel joined with the recommendation of DCFS that M.F. remain with Father, and also informed the juvenile court it was M.F.'s wish that the case remain open to give her the opportunity to reunify with Mother. M.F.'s counsel agreed with the request to keep the case open as "Father and [M.F.] have a more limited relationship compared to her relationship with Mother" and because of the information regarding a pending criminal charge against Father for rape in Tennessee.

Mother requested M.F. be released back to her with safety measures put in place or, in the alternative, that she be granted

unmonitored visits or phone calls. Father requested the case be closed with a juvenile court order granting him "full physical custody and full legal custody."

The juvenile court ordered M.F. removed from Mother's custody and placed with Father under the supervision of DCFS. The court maintained jurisdiction due to lingering concerns as to Father's behavior that could bear on M.F.'s wellbeing and ordered individual counseling for M.F. and conjoint counseling for M.F. and Father, but struck parenting and individual counseling from his case plan. The court ordered Mother to engage in a drug and alcohol program, random drug and alcohol testing, a 12-step program, parenting and individual counseling, and awarded her monitored visits and unmonitored phone contact.

At an October 2024 progress hearing, DCFS recommended terminating jurisdiction. Counsel for M.F. opposed, noting she still wanted "the opportunity to reunify." The juvenile court denied the request to terminate the case but granted DCFS's request to terminate the requirement of a substance abuse and 12-step programs, as Mother "is not meeting clinical criteria." The court also ordered DCFS to provide Mother with housing and travel assistance.

In January 2025, the juvenile court held a review hearing pursuant to section 364 as to M.F. DCFS recommended closing the case as to M.F. with a juvenile custody order granting Father "primary physical custody, joint legal custody," and Mother to have "unmonitored and overnight visits," noting it was seeking "joint-joint." M.F.'s counsel noted M.F. still wanted to keep the case open, hoping to return to the care of Mother. However, M.F.'s counsel joined with DCFS in recommending primary physical custody to Father and joint legal custody with unmonitored overnight visits for Mother.

Mother submitted to the recommendation of closing the case "with a custody order of joint, joint," but sought primary physical custody for herself so the siblings could remain together and since M.F. wished to return to Mother. Mother's counsel

4

agreed mediation would be appropriate "since mother and father do have some difficulties co-parenting."

Father strongly objected to Mother's request for "primary care of [M.F.]," and asked for "sole physical and sole legal custody," with Mother to have unmonitored overnight visits.

The juvenile court terminated jurisdiction and ordered joint legal and joint physical custody, with Father to have primary physical custody. The court ordered the parties to mediate a shared custody schedule, but if they were not able to agree, the court would hear argument on that issue; and the court stayed its orders until a future hearing date. The court also awarded Father "tie-breaking authority after a good-faith effort to address [M.F.]'s needs collaboratively," concluding "that should be addressed as part of any mediation agreement."

On February 20, 2025, the juvenile court held a further custody order hearing for M.F. The court confirmed it had ordered tie-breaking authority for Father and noted that, despite the parties having attended mediation, and the existence of a proposed mediated agreement (which does not appear in the record), the parents were unable to agree on the terms of the custody arrangements.

Mother objected to Father having tie-breaking authority, arguing that would be tantamount to having sole legal custody since they had difficulties in coparenting and thus Father would just "leave her out." Mother also argued she did not have financial capacity to pay for all flights to and from California, as she was already having difficulty with housing and other financial problems. But Mother did not disagree with the proposed schedule, with her counsel stating: "Mother is not contesting the agreed-upon scheduling, summers, every other winter, and things of that nature. At this point, it's simply her being responsible for the airfare is just overly burdensome."

Father then objected "to paying for a return flight" as his employment had changed, so his financial situation was "not what it was initially" and paying for flights would also be a

burden for him. He argued that since he had been responsible for all flights when M.F. lived in California, Mother should be responsible for all flights now that M.F. lived with him in Tennessee. He did not raise any objections to the custodial schedule.

The juvenile court ordered Mother to bear two-thirds of the costs of transportation between Tennessee and California, with Father to bear one-third. The court maintained its order that Father have tie-breaking authority as to legal custody, but adopted the proposed mediation agreement with an amendment that parents are to engage in good-faith discussions and negotiations before Father may override Mother's objections as to legal custody-related issues. Mother's counsel lodged her continued objection to tie-breaking authority to Father and to paying any more than one-half the airline costs. Father did not object during this hearing to the court's ordering joint physical custody with primary residence to Father.

The February 27, 2025 juvenile custody order and final judgment provided for joint legal and physical custody, with primary residence to Father. The court awarded Father tie-breaking authority. The court ordered M.F. to live primarily with Father and go to school in Father's school district; Mother would have parenting time with M.F. every summer for two months, and every other winter break for two weeks, with specific details to be arranged by parents. Finally, the court ordered Mother to bear two-thirds of the cost and Father one-third of the cost of flights for M.F. to travel between Tennessee and California.

Father filed a timely notice of appeal of the juvenile court's judgment. Mother filed a timely notice of appeal thereafter.

## DISCUSSION

### I.    Standard of Review and Applicable Law

When terminating its jurisdiction over a child who has been declared a dependent child of the court, the juvenile court may issue "an order determining the custody of, or visitation with, the child." (§ 362.4, subd. (a).) The orders remain in effect until

6

modified or terminated by a subsequent order in the family court. (*In re T.S.* (2020) 52 Cal.App.5th 503, 513 (*T.S.*).)

When making an order under section 362.4, " 'the court's focus and primary consideration must always be the best interests of the child.' " (*T.S., supra,* 52 Cal.App.5th at p. 513.) Thus, certain statutory presumptions in the Family Code do not apply. (*In re Jennifer R.* (1993) 14 Cal.App.4th 704, 711 (*Jennifer R.*).)

We review a juvenile court's custody and visitation orders for an abuse of discretion. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318.) A reviewing court should not disturb a custody determination in a dependency proceeding " ' "unless the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination." ' " (*Ibid.*) " ' "When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." ' " (*Ibid.*)

An abuse of discretion may arise if the juvenile court bases its decision on impermissible factors or an incorrect legal standard. (*People v. Knoller* (2007) 41 Cal.4th 139, 156.)

## II. The Juvenile Court Did Not Err

### A. The Order for Joint Physical Custody and Primary Residence With Father

Father argues the juvenile court's order granting joint physical custody to the parents, with primary residence with Father, was an abuse of discretion. Father first argues that since the court did not explain its reasoning, it failed to apply the best interests of the child standard. Father next argues the court misstated the law by ordering joint physical custody with primary custody to Father instead of sole physical custody, since the law does not recognize "primary physical custody."

Finally, Father argues the juvenile court erred in granting joint physical custody because it was not in M.F.'s best interests to "shuttl[e] between Tennessee and California," and Mother

posed a danger to M.F. Rather, he contends, the court should have granted Father "sole physical custody with a visitation plan."

As to Father's first argument, the juvenile court was not required to set forth its reasoning for the custodial orders on the record. (*Jennifer R., supra,* 14 Cal.App.4th at p. 713.) "The juvenile court's orders are 'presumed to be correct, and it is appellant's burden to affirmatively show error.' " (*In re J.F.* (2019) 39 Cal.App.5th 70, 79 (*J.F.*); accord *In re Sade C.* (1996) 13 Cal.4th 952, 994 ["An appealed-from judgment or order is presumed correct."].)

In any event, the juvenile court did provide its reasoning why joint custody with primary residence with Father was in M.F.'s best interests: "Despite [M.F.]'s resistance to residing with Father . . . by all accounts, she is thriving and doing well and healing from many of the issues that had plagued her at the outset of this case. [¶] Mother has made sufficient progress for the court to find that all of these orders are in [M.F.]'s best interest." The court then ordered the *parties* to work out a shared custody schedule. We discern no abuse of discretion.

As to the second argument, Father points out that while the term "primary physical custody" is often used, it has no legal meaning and is not found in the Family Code and the juvenile court should have ordered sole physical custody.

Courts have often noted "the term 'primary physical custody' has no legal meaning." (*In re Marriage of Biallas* (1998) 65 Cal.App.4th 755, 759; see also *In re Marriage of LaMusga* (2004) 32 Cal.4th 1072, 1081, fn. 1; *In re Marriage of Richardson* (2002) 102 Cal.App.4th 941, 945, fn. 2.) Rather, under the Family Code a parent may be awarded joint physical custody (Fam. Code, § 3004) or sole physical custody (Fam. Code, § 3007). Sole physical custody is defined as meaning "a child shall reside with and be under the supervision of one parent, subject to the power of the court to order visitation." (Fam. Code, § 3007.)

Nonetheless, the term "primary physical custody" is often used colloquially in family and dependency courts and indeed, the JV-200 form used for juvenile judgments expressly asks the juvenile court not only to note which parents have physical custody, but also which parent does the child have a "primary residence with."

Here, we need not address the question of whether the schedule ordered by the juvenile court should have been more properly deemed "sole physical custody" because Father never objected on this basis in the juvenile court. He requested sole physical custody at the January 2025 review hearing, where he objected to Mother's requested for "primary" custody, and requested Mother be given unmonitored "overnight visits." The court granted joint physical custody and awarded Father with "primary physical custody" at that hearing, but that order was stayed, as the court sent the parties to mediate the actual schedule.

When the parties returned in February 2025 with a proposed mediation agreement, Father's only argument to the juvenile court was that Mother should pay for airfare and Mother's addresses should be provided to Father while M.F. was visiting Mother. He not only did not object to the schedule, but did not raise the issue of whether the proper term for the schedule the parties had agreed to in mediation was really "sole" as opposed to "joint" physical custody. Thus, the court was not able to address that concern. We conclude Father has forfeited that point. (*In re Dakota S.* (2000) 85 Cal.App.4th 494, 502.)

Even if the issue was not forfeited, Father does not argue on appeal with citation to authorities and argument that the actual schedule ordered by the juvenile court amounted to sole physical custody rather than joint custody. (See *Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277 (*Hernandez*) [" 'When an appellant raises an issue "but fails to support it with reasoned argument and citations to authority, we treat the point as waived." ' "].)

Finally, we reject Father's contention the juvenile court erred in granting joint physical custody as it was not in M.F.'s best interests. He argues it was not in M.F.'s best interests to shuttle back and forth between Tennessee and California, and there was "substantial evidence that mother posed a danger to [M.F.]." He argues that when the case began, Mother was not able to appropriately supervise the children, and that as of the time of the judgment, Mother was unemployed and homeless.

It is unclear whether Father is arguing the juvenile court erred in awarding the specific visitation schedule it did (two months every summer and two weeks in the winter every other year), and what alternative schedule Father believes should have been ordered. After the court ordered the parties to mediate a joint custody schedule with primary residence to Father, Father reached an agreement with Mother as to this very schedule. Even if the issue was not thereby waived below, it has been forfeited as he does not articulate on appeal what the court should have done differently, conceding that even with sole custody, Mother would have had visitation rights.

Even if the issue had not been waived or forfeited, Father misunderstands his burden on appeal. The question is not whether there was substantial evidence in the record to support his request for sole physical custody or a specific schedule he may have wanted, but whether there was substantial evidence to support the juvenile court's ruling.

" '[E]valuating the factual basis for an exercise of discretion is similar to analyzing the sufficiency of the evidence for the ruling. . . . Broad deference must be shown to the trial judge. The reviewing court should interfere only " 'if [it] find[s] that under all the evidence, viewed most favorably in support of the trial court's action, no judge could reasonably have made the order that he did.' " ' " (*In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1351, disapproved on other grounds by *In re Caden C.* (2021) 11 Cal.5th 614.)

10

Father's opening brief omits much of the evidence before the juvenile court. At the January 2025 hearing, the court entered into evidence a status review report, filed December 17, 2024. Father omits from his opening brief anything favorable to Mother in that report, but we note the following facts as of its filing date.

Mother was employed at Rent-A-Center and resided with Maternal Grandfather. She did not have stable housing but had been approved for the Bringing Families Home program and had been provided with additional housing resources. She had been compliant with juvenile court orders and understood the importance of supervision. She had completed a 10-week parenting program and individual counseling as of the prior progress report in October 2024. These classes had taught her how to communicate, and she was open to participating in services to enhance her parenting skills. From October 9, 2024, to December 6, 2024, Mother had tested negative in six drug and alcohol tests and no positive tests were reported. The juvenile court terminated the substance abuse program and 12-step requirements, but authorized DCFS to continue with Mother's random drug testing. DCFS was providing substantial assistance and support to Mother, including hotel vouchers, transportation vouchers, and parent partners.

Father also omits any mention of M.F.'s considerable ties to Mother, including M.F.'s own desire to visit her and K.S. and hopes to reunify with her. While the desires of a nine-year-old are not and should not be dispositive as they do not necessarily reflect the child's best interests, the evidence reflects M.F. had always lived with her Mother and had a strong attachment to her.

The parents lived some 2,000 miles apart and both claimed financial issues, making a more traditional schedule, such as weekend visits, impossible. (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 40 (*Burgess*) ["[A] noncustodial parent's relocation

far enough away to preclude the exercise of existing visitation rights can be ground for modifying a visitation order to allow for a different schedule for contact with the minor children, e.g., longer, but less frequent, visitation periods."].)

It was not an abuse of discretion for the juvenile court to adopt the parties' own proposed schedule that allowed M.F. to retain a close relationship with Mother by visiting her in the summer months, even though there were challenges with Mother's housing. (*In re G.S.R.* (2008) 159 Cal.App.4th 1202, 1213.)

As with all custodial orders upon termination of jurisdiction in dependency, Father remains free to ask a family law court to modify this or any other part of the juvenile judgment. (*In re T.H.* (2010) 190 Cal.App.4th 1119, 1123.)

### B.    The Order that Mother Pay Two-thirds and Father Pay One-third of Transportation Costs

As noted, both parties challenge the juvenile court order as to payment of transportation costs. Mother argues the court should have ordered Father to bear the entire cost or, at most, the parties to share the cost equally.

Father on the other hand argues there was "no basis" to have him pay for any transportation costs as he did not owe Mother child support once M.F. was in his custody, and he had previously paid the entire costs of transportation when M.F. lived in California.

The record reflects Mother was having difficulties in obtaining stable housing due to her financial situation. Father contended at oral argument he was having financial difficulties due to changed employment. Significant to our resolution here, neither party presented any supporting documentation regarding their respective economic positions.

We reject both parties' arguments as to transportation costs. Father cites no statute or case law to support his argument

12

on this issue and we may treat the argument as forfeited. (*Hernandez, supra*, 37 Cal.App.5th at p. 277.)

Mother cites two cases arising from hearings authorizing a move-away during divorce proceedings. In *Burgess,* the court held a trial court has broad discretion to minimize the minor's loss of contact with the noncustodial parent by, among other things, allocating transportation expenses to the custodial parent. (*Burgess, supra*, 13 Cal.4th at p. 40.) The other case, *In re Marriage of Whealon* (1997) 53 Cal.App.4th 132, 139, does not mention who was ordered to pay transportation costs. We have found no case and the parties cite none, involving the parameters of a juvenile court's decision for orders regarding payment of transportation costs of a minor.

Even deciding both parties' arguments on the merits, we find no abuse of discretion in the juvenile court's decision to require the parties to share the transportation costs, with Mother paying two-thirds and Father paying one-third. Where both parents contend they face economic difficulties and Father had previously paid for transportation, no ideal option exists. Taking all of the facts in the record into consideration, we cannot say the court's order was an abuse of discretion.

Again, either party is free at any time to file a request to modify the juvenile court's judgment in the family court division by filing a request for order.

> C.     **The Order for Joint Legal Custody With Tie-breaking Authority to Father**

" 'Joint legal custody' means that both parents shall share the right and the responsibility to make the decisions relating to the health, education, and welfare of a child." (Fam. Code, § 3003.) As with other custodial orders under Welfare and Institutions Code section 362.4, a determination as to legal custody is committed to the sound discretion of the juvenile court. (*Jennifer R.*, *supra*, *supra,* 14 Cal.App.4th at p. 712.)

13

While not specified in any statutory provision, it is not uncommon for parents to seek, and family and juvenile courts to grant, tie-breaking authority to one parent even when granting joint legal custody. Unfortunately, there is a dearth of published case law on the subject to guide the parties.

Mother argues the juvenile court abused its discretion by awarding Father tie-breaking authority when it granted joint legal custody. Mother argues: DCFS had recommended the parents share legal custody without mentioning tie-breaking authority; Father did not request it (although he did request sole legal custody); and there was no reasonable basis for it.

Citing *In re N.M.* (2023) 88 Cal.App.5th 1090, 1095, Mother contends that because the juvenile court gave no reason for the order, granting tie-breaking authority was reversible error. But as we have already noted, the juvenile court was not required to set forth its reasoning for the custodial orders on the record. (*Jennifer R., supra,* 14 Cal.App.4th at p. 713.) "The juvenile court's orders are 'presumed to be correct, and it is appellant's burden to affirmatively show error.' " (*J.F., supra*, 39 Cal.App.5th at p. 79.) Thus, *N.M.* is inapposite; there, the court indicated on the record the reason it was giving the mother sole legal custody was a prohibited reason—to punish the father. (*N.M.,* at p. 1095.) Thus the usual presumption of correctness was rebutted by the record. Here, there is no evidence in the record the court relied on any improper consideration.

Mother's sole substantive argument is the same one she made to the juvenile court; namely, given the parties' difficulties in coparenting, granting tie-breaking authority to Father "would be tantamount to him pretty much having sole legal custody," as he "will, in essence, leave her out."

We conclude the juvenile court could reasonably have found the orders to be in M.F.'s best interests. Contrary to Mother's argument, the fact the parents had difficulty coparenting tends to support an order granting one parent tie-breaking authority.

When parents who share joint legal custody cannot coparent, decisions cannot be made. Decisions ranging from medical care, what school to go to, and even what sports to play, get delayed or end in a stand-off.

Moreover, it is often reasonable to award tie-breaking authority to the parent who is the primary custodial parent. Particularly when the parties admit they cannot effectively coparent, it would make little sense to award Mother tie-breaking authority about what school or doctor M.F. should go to, when M.F. lives with Father on the other side of the country for 10 months out of the year.

Here, the juvenile court reasonably responded to Mother's stated concern with an amendment to the orders requiring "the parents . . . to engage in good-faith discussions and negotiations before Father does proceed to override any possible objections Mother may lodge as to legal custody-related issues." We cannot find an abuse of discretion here.

As stated previously, these orders too remain subject to modification. If circumstances change, either parent can file a request in family court to modify these orders as well.

### D. The JV-200 Judgment Form Should Be Corrected

Mother asks, in the alternative, that the JV-200 judgment form be corrected to conform to the order made by the juvenile court referenced above; specifically, "to amend the mediation agreement or provide supplemental information in the JV-200" that the parents are to engage in good-faith discussions and negotiations before Father proceeds to override any possible objections Mother may lodge as to legal custody-related issues. The JV-200 in the record does not contain that language in the order for tie-breaking authority for Father (although it does refer to an attached mediation agreement, which is not in the record).

Father did not file a responsive brief to Mother's opening brief, and did not address this issue in his opening brief.

A court, including an appellate court, has inherent power to correct clerical errors in its records to make the records reflect the true facts, including the oral judgments of judicial officers. (*People v. Mitchell* (2001) 26 Cal.4th 181, 186–187.) We agree such correction of the record is appropriate here to accurately reflect the juvenile court's oral orders. (*In re Maribel T.* (2002) 96 Cal.App.4th 82, 86.)

## DISPOSITION

The custody orders of February 27, 2025, are affirmed. The cause is remanded to the juvenile court with directions to correct the JV-200 judgment form filed February 27, 2025, to insert the following language on page 3, paragraph 13: "The parents are to engage in good-faith discussions and negotiations before Father overrides any objections Mother may lodge as to legal custody-related issues."


RICHARDSON, J.


WE CONCUR:


CHAVEZ, Acting P. J.


GOORVITCH, J.*

---

\*     Judge of the Superior Court of Los Angeles County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.